442 P.2d 550

**Walker McCUNE, Appellant,**

**v.**

**DYNAMICS RESEARCH, INC., an Arizona corporation, and Pioneer Bank of Arizona, an Arizona banking institution, Appellees.**

**I CA–CIV 471.**

Court of Appeals of Arizona.

June 12, 1968.

Rehearing Denied July 3, 1968.

Review Denied Sept. 17, 1968.

**14**

Mariscal, Goss, Green & Corbet, by Sheldon Green, Phoenix and Louis A. Sackin, Los Angeles, Cal., for appellant.

Hill, Savoy & Flickinger, by, John E. Savoy, Phoenix, for appellee Dynamics Research, Inc.

Moore, Romley, Kaplan, Robbins & Green, by, Curtis A. Jennings, Phoenix, for appellee Pioneer Bank of Arizona.

DONOFRIO, Judge.

This is an appeal by Walker McCune from a summary judgment rendered against him in favor of Pioneer Bank of Arizona and Dynamics Research, Inc.

The facts leading to this appeal, which will be viewed in the light most favorable to plaintiff, the party opposing the summary judgment, Harbour v. Reliable Insurance Company, 94 Ariz. 344, 385 P.2d 220 (1963), are as follows: Plaintiff Mr. Walker McCune was in need of a loan in excess of $3,800,000 and had apparently been unsuccessful in obtaining such loan. He then began negotiations with Mr. Herbert J. Miller of Dynamics Research, Inc. who agreed to aid in obtaining the loan for a fee of $150,000. After some debate McCune agreed to pay Miller the said fee. The negotiations took place sometime in April, 1965. On or about May 6, 1965, Dean Witter & Co. of New York agreed to lend and did deliver to McCune $3,835,115.32. McCune executed two checks in the amounts of $100,000 and $50,000 to Dynamics to pay the "finder's fee". Later, on May 18, 1965, he executed a note and mortgage to pay for those two checks and a $20,000 check to Miller which was to reimburse him for certain costs he had incurred on behalf of McCune.

On May 24, 1965, Dynamics and Herbert J. Miller and wife borrowed the sum of $75,000 from Pioneer Bank. This loan was evidence by a promissory note in that amount and delivered and executed on that date. As security for payment of this note Dynamics and the Millers endorsed and delivered the McCune note to the bank and executed an assignment of the mortgage securing it. At the time the McCune note and mortgage were delivered to Pioneer Bank, McCune himself was requested to come to the bank and affirm that they were his obligations. The style of the type used in the typing of the name Dynamics Research, Inc. and the rest of the typed portions of the promissory note and mortgage appeared different and therefore the officers of the bank requested McCune to initial the note and mortgage near those words to indicate that the note and mortgage in the form in which they appeared were authentic. This he did.

Neither McCune nor Dynamics Research and the Millers paid their respective notes when due. On August 19, 1965, McCune filed a complaint to have his note and mortgage declared null and void on the grounds of fraud and lack of consideration. Both Dynamics and Pioneer Bank answered, denying fraud and lack of consideration and prayed for judgment against McCune on his promissory note and for foreclosure of the mortgage securing it. Pioneer Bank also cross claimed against Dynamics and the Millers on their promissory note in the amount of $75,000. Pioneer Bank and Dynamics filed motions for summary judgment. Pioneer's motion was granted and Dynamics' motion was denied, but later, however, after the taking of an additional deposition, that motion was resubmitted and then granted. A formal written judgment was entered and this appeal followed. The judgment in favor of Pioneer's cross claim has not been appealed. The part of the judgment which has been appealed is that which denies the relief prayed for by McCune and allows the foreclosure of the mortgage and the payment of the $170,000

to Dynamics Research, Inc., less the $75,000 granted in the cross claim of Pioneer Bank.

The appeal raises several questions, the first of which is whether the court erred in entering judgment in favor of Dynamics on the note and mortgage after Dynamics' interest in the note and mortgage had been assigned to the bank. The second is whether the judgment for attorneys' fees was proper; and finally, whether the court erred in granting summary judgment in that there were genuine issues of fact remaining to be determined.

■ As to the first issue, appellant Mc-Cune urges that Dynamics could not maintain an action on the note and mortgage as it was not the holder of these instruments, having previously transferred them to the bank. In determining this question, it becomes necessary to bring out certain facts. The note was endorsed and the mortgage assigned to the bank by Dynamics under the terms of a pledge agreement as collateral security for the loan from the bank. McCune instituted the original suit making Dynamics a defendant, and by this action placed the note and mortgage in issue and sought to have the rights of both Dynamics and the bank in the note and mortgage determined. Both pledgor and pledgee were before the court. Although it is the general rule that only a holder may sue on a promissory note, there are exceptions to this rule, one of which involves the pledgor of a negotiable instrument.

An early annotation in A.L.R. reads: "The pledgee of paper, as well as the pledgee of other property, has the control of it for the time being, and he represents not only his own interest, but that of the pledgeor, in taking any proper action for the preservation of it and the collection and care of its proceeds. 21 R.C.L. 666. But it has been very generally held that the pledgeor may, in certain circumstances, maintain an action in his own name for the collection or enforcement of the collateral. And it has been said in some cases that the pledgeor in general retains an interest in the collateral which

entitles him to maintain an action thereon. The prosecution of the pledgeor's action must, of course, be without prejudice to the rights of the pledgee or of the party who is liable on the pledged paper. As to the duty of the pledgee of commercial paper with respect to its enforcement and collection, see annotation in 51 A.L.R. 609." 65 A.L.R. 1321 (1930)

The briefs have cited cases variously holding that a pledgor can or cannot bring suit on an instrument, depending upon his interests. For cases holding that a pledgor can bring suit on an instrument with consent of the pledgee, or if the pledgee is a party to the action see: Buckman v. Hill Military Academy, 182 Or. 661, 189 P.2d 575 (1948); Morrison v. Gulf Oil Corporation, 189 Miss. 212, 196 So. 247 (1940); and Randolph v. Citizens Nat. Bank of Lubbock, 141 S.W.2d 1030 (Tex.Civ.App. 1940).

As we view the cases, the paramount concern of the courts is to protect the obligor under the instrument, or in the case of a note, the maker, from double liability. In the instant case it was McCune, the maker of the note and mortgage, who brought the action, naming as defendants all parties having an interest in the instruments. They were all before the court and subject to being protected.

■ The judgment entered by the court in favor of the bank and Dynamics clearly spelled out that the only liability of McCune was the sum of $170,000 as principal, plus the sum of the interest, attorneys' fees and costs, and that the first monies paid were to be paid to the Pioneer Bank to satisfy its lien in the amount of $75,000 as principal, plus interest, attorneys' fees and costs, and thereafter the balance of the McCune obligation was to be paid to Dynamics. Pioneer Bank as pledgee was the holder of the note and mortgage to the extent of its lien, and Dynamics as pledgor still retained an interest in the note and mortgage to the extent of the surplus. Dickson v. Bank of Chandler, 25 Ariz. 243, 215 P. 926 (1923). In the instant case where the maker of the note and

all the parties having an interest in the note were before the court, we would hold that Dynamics could properly maintain the action.

We next consider the question as to whether the judgment for attorneys' fees was proper. After the court's ruling on the motions for summary judgment, a formal written judgment was presented for the court's signature. McCune filed objections to the attorneys' fees. Thereafter, the attorneys representing the bank and Dynamics filed affidavits setting forth the legal services performed and the reasonable value of these services. McCune did not file controverting affidavits, nor did he request time to submit evidence. After oral argument at the hearing on objections and consideration of the affidavits, the trial court rendered its decision on the attorneys' fees and a new form of judgment was lodged with the trial court. This was signed and entered without objections. In its final judgment and decree insofar as this appeal is concerned, the trial court found a reasonable attorney's fee in the sum of $17,000. Plaintiff attempts to rest on the mere allegations of his answer that are denials of the reasonableness of the attorneys' fees and has not responded to the affidavits of the defendant.

Rule 56(e) of the Rules of Civil Procedure 16 A.R.S. provides as follows:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The motion for summary judgment was supported by affidavit pursuant to this rule. The affidavit of counsel for Dynamics sets forth in chronological order conferences, trips, negotiations, the filing of various pleadings, court appearances, taking of deposition and legal research. Counsel also sets forth fourteen years of practice and gives his opinion that a reasonable fee for the services is $17,000.

■ When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but he must respond by affidavits or as otherwise required by the rule, setting forth specific facts showing a genuine issue for trial. If this is not done, summary judgment, if appropriate, shall be entered against him. Rule 56(e), supra; Martinez v. Coombs, 93 Ariz. 127, 379 P.2d 118 (1963).

■ Attorneys' fees are generally within the sound discretion of the trial court's judgment. In this case plaintiff not having responded to the affidavits, there is nothing to dispute the services rendered or the fact that the fee was reasonable. It was set as approximately 10 percent of the amount in question, and for the work involved we do not believe there was any abuse of discretion by the trial court in this regard. We hold the judgment for the attorney's fee is proper.

The third contention of plaintiff on appeal is that there were remaining for the trial court genuine issues of material fact and therefore the summary judgment was improper. The issues of fact alleged by plaintiff are that there was a failure of consideration on the note, and also that there was fraud in the inducement when McCune signed the note and mortgage. It should be pointed out that the note and mortgage were in fact made to cover checks written

by McCune when he did not have sufficient money in his bank account to cover them. The affidavit offered in support of the summary judgment motion attests to the fact that McCune promised to pay Dynamics the sum of $150,000 as a fee for obtaining the loan for him. McCune does not deny that he agreed to pay a fee for obtaining this loan. The best evidence of the consideration which was made for this $150,000 obligation is in McCune's own deposition which we shall quote from at this point:

"Q Well, at the time it (the Note) was presented for signature, did you question it?

"A No.

"Q At that time you believed that there was a consideration for that note?

"A Yes.

"Q Is that correct?

"A Yes.

"Q All right. What consideration was that, sir?

"A Theoretically, it was so-called for some kind of a fee for getting a loan at Dean Witter.

"Q I see. And you agreed to pay him a fee for getting this loan; is that correct?

"A Well, we argued about it.

"Q When, sir?

"A It was one of those things. I kept putting it off they kept hammering at me and I didn't have the money, so I still kept on putting it off.

"Q In other words, this note was just in place of the money to be paid at a later date?

"A Yes.

*   *   *   *   *   *

"Q BY MR. SAVOY: I believe, Mr. McCune, just before the break, it was your testimony that the note and mortgage were to represent the payment, I believe your testimony was, to Mr. Miller for this work done in securing funds for you.

"A Yes.

"Q Now, sir, when had you agreed to pay Mr. Miller that consideration?

"A Oh, it was back in April some time; the exact date I don't remember.

"Q Now, do you recall a man by the name of Standafer?

"A Yes.

"Q I believe you were on the telephone with Mr. Standafer at the time, were you, sir?

"A Yes.

"Q And you told Mr. Standafer that you would pay the $150,000 to Dynamics Research?

"A No.

"Q You did not?

"A No. I said I would pay it to Miller.

*   *   *   *   *   *

"Q All right, sir. Did you ever secure these funds through Mr. Standafer?

"A I got my funds from Dean Witter.

"Q Right. Through Mr. Standafer's efforts; is that right, sir?

"A That I don't know because I wasn't there.

"Q Well, sir, you weren't where?

"A In New York.

"Q Where did you get those funds, in New York?

"A Here. The funds came from New York, yes, and they took my security back in New York.

"Q And who made the first contact of Dean Witter on your behalf?

"A That I don't know.

"Q You didn't make the contract yourself diectly, (sic) did you?

"A No.

"Q It was made through Mr. Miller?

"A Yes.

"Q And through Mr. Standafer?

"A Well, I don't know. Mr. Miller may have done it.

"Q At any rate, this $170,000 represents that consideration; is that correct?

"A That is my understanding, yes.

"Q And that you agreed upon?

"A Yes.

"Q All right. Now, what was the amount of the consideration? Was it $170,000 or $150,000?

"A $150,000, and the $20,000 was for that other check.

\* \* \* \* \* \*

"Q Now, sir, you have testified today that the $170,000 note and mortgage was the consideration for securing these funds from the Dean Witter and Company for you on your behalf.

"A Yes."

■ From the foregoing quotations it appears that not only did McCune agree to pay the amount of money in question here, but through the efforts of Miller and Dynamics the loan was obtained. We hold that the trial court was justified in ordering a summary judgment insofar as the failure of consideration question is concerned.

■ Plaintiff also sets forth the argument that there was a fraud in the inducement to make the note and mortgage in question. In his affidavit McCune stated that "it would be necessary to execute said note and mortgage, otherwise the loan from Dean Witter & Co. would not be forthcoming; \* \* \*." In truth and in fact, however, the note and mortgage were executed some ten days to two weeks after the loan had been made and funds secured by McCune. Therefore, any argument that the note and mortgage were conditions precedent to the issuing of the loan is not well founded.

Appellant has also argued that the use by Miller of the words "to me it was a windfall" created a genuine issue of material fact. These words were used by Miller in a deposition when he was asked as to how the obligation arose. The specific question and pertinent part of the answer reads:

"Q How did this obligation arise?

"A It arose—to me it was a windfall. Mr. McCune told me a story \* \* \*." The remaining portion of the answer is long, giving considerable background. It would serve no purpose to set it forth. Suffice to say, we have read the entire deposition, bearing in mind these particular words, and cannot find any merit to appellant's contention. The words were uttered as a prefatory statement to a long answer as an expression by Miller as to how he regarded the matter. We are unable to find any evidence from which any inference can be drawn to favor the contention that there was an issue of fact as to whether or not there was consideration or whether or not there were false representations to induce the signing of the note by McCune. The word "windfall" alone does not have any such connotation.

Plaintiff urges that the defenses of failure of consideration and fraud are available against the bank as it was a holder in due course. Having found that the trial court was justified in granting the motion for summary judgment in that the defenses were not adequately put in issue, we need not pass upon the question.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.