550 P.2d 671

**Jack H. KELMAN and Alice Kelman, his wife, Appellants,**

**v.**

**Jacob Ernest BOHI and Marilyn Jean Bohi, husband and wife, Appellees.**

**No. 1 CA–CIV 2618.**

Court of Appeals of Arizona, Division 1, Department B.

June 10, 1976.

Horace L. Lurie and Stuart B. Schoenburg, Phoenix, for appellants.

Lewis & Roca by Douglas L. Irish, Paul G. Ulrich, Phoenix, for appellees.

**28**

EUBANK, Judge.

This appeal raises as its primary issue the propriety of the trial court's granting of a partial summary judgment immediately prior to trial, on a portion of the damage which appellees sought. Rules 56 and 54(b), Rules of Civil Procedure, 16 A.R.S., are analyzed with regard to this issue.[1]

The Bohis, appellees, were the owners of $35,500 worth of bearer bonds issued by the Evening Light Crusade for Christ, Inc. Jack and Alice Kelman, appellants, owned the Arizona Ranch House Inn at which Jerome Joseph, a friend of Bohi, was a resident. Joseph had represented Jack Kelman in occasional business dealings.

Bohi gave Joseph some of his bearer bonds in an attempted sale of them to Kelman. Kelman took the bonds from Joseph and held them to determine whether they would be redeemable When he found that they were good, he refused to pay for or return them to Bohi.

According to Kelman, Joseph owed several thousand dollars to Kelman and to the hotel, and Joseph offered the bearer bonds, representing them as his own, in satisfaction of his debts. Kelman accepted the bonds in satisfaction of Joseph's debts to him.

The Bohis filed a complaint seeking relief for the loss of the bonds alleging fraud by Joseph, conversion by Kelmans, conversion by Joseph, conspiracy to defraud by both Joseph and Kelmans, and wrongful detention by Kelmans. Kelmans answered, denying most of the allegations but admitting ownership and redemption of certain of the bonds, and they cross-claimed against Joseph.

Prior to the jury trial, Bohis moved for "partial summary judgment" against the Kelmans. That motion was granted, and later, following the trial, the jury returned its verdict in favor of the Bohis. The Kelmans have appealed and raise numerous questions on appeal.

## I. THE PARTIAL SUMMARY JUDGMENT

Four of the issues raised by the Kelmans in this appeal concern the propriety of the "partial summary judgment."[2]

### A. *The pledge defense*

The Bohis interpreted appellants' defense to be a pledge defense. Appellants admitted that Joseph owed them and their corporation $11,001.56 and that Joseph had paid them $10,313.03, and thus an amount of $688.53 remained unpaid by Joseph. Before the trial, appellants redeemed the bonds for $18,242.40. The Bohis thus moved for a partial summary judgment in the amount of $17,553.87, representing the difference between the $18,242.40 redeemed by the Kelmans and the $688.53 still owed by Joseph. As noted earlier, this motion was granted.

Appellants disagreed with this characterization of their defense. They said that the facts "could very well be interpreted as creating a security interest, but they could also be interpreted as being an absolute sale with an option back."

We disagree. Both parties rely upon a document executed by Joseph which reads in part:

> I, Jerome Joseph, do hereby agree that if Jack Kelman does not have, at the time of 3:00 P.M. February 1st, 1972, all money due and owing him by me, I will forfeit all bonds in his possession.
> . . .

Language of forfeiture is inconsistent with the creation of an option. An option is simply an agreement which gives the optionee the power to accept an offer for a

---

1. All references to Rules hereafter refer to the Rules of Civil Procedure, 16 A.R.S., unless specifically otherwise designated.

2. This appeal does not present the question of a Rule 56(c), Rules of Civil Procedure, 16 A.R.S., "partial" summary judgment: "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

limited time. The option expires when the time passes with no acceptance having been made; there is no "forfeiture" of the subject property to the optionor. This document indicates clearly to us that the parties intended to create a security, or pledge, relationship and that, consistent with such a relationship, Joseph had a right to redeem the bonds. We are not persuaded by appellants' transcript references that a sale was intended, nor does the evidence support this theory.

Therefore, in our opinion the trial court was correct in characterizing the appellants' possession of the bonds as a pledge, and appellants' response to appellees' motion for summary judgment was insufficient to preclude summary judgment on that basis.

We hold also that the court's view of the law, concerning the disposition of the excess of the amount pledged over the amount owed, was correct. Both A.R.S. §§ 44–3148 (B) and 44–3150(B) [UCC §§ 9–502 and 9–504] state, in part, "If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus. . . ." Of course, where the creditor is in possession of the collateral, no written security agreement is required. "Creditor's possession satisfies 9–203 [A.R.S. § 44–3116] and the oral understanding on the security aspects satisfies 9–204's [A.R.S. § 44–3117's] agreement requirement." White and Summers, Uniform Commercial Code § 23–3 (1972). The trial court thus properly determined that the surplus from the redemption of the bonds was not the Kelmans'.

■ Appellants claim that the statute which applies to this set of facts is A.R.S. § 44–3151(B) [UCC § 9–505(2)]. This section allows a secured party in possession to retain the collateral in satisfaction of the obligation, provided that written notice of the proposed retention is sent to the debtor. Appellants' response to the motion for summary judgment gave no indication that the notice requirement of A.R.S. § 44–

3151(B) had been complied with, and we find no indication of compliance elsewhere in the record. Since no controverting facts were developed to establish that A.R.S. § 44–3151(B) might apply, the court was correct in following those sections which clearly did apply to the facts.

B. *No genuine issues of material fact*

■ Appellants also argue that genuine issues of material fact existed, which precluded the granting of the summary judgment. Without going into laborious detail, we find that no genuine issues of material fact existed. First, appellants contend that the issue of ownership of the bonds was never established clearly. We find that it was clear from the record that the appellants had only a pledgee's right of possession and that the issue of ownership (as between Joseph and the appellees) was not relevant in the summary judgment against appellants.

Second, appellants argue that it was not clearly established that they were not bona fide purchasers of the bonds. In view of the determination that appellants were pledgees, we fail to see the importance of this issue. If they were bona fide purchasers, they were purchasers solely to the extent of the amount secured by the pledge. *McCune v. Dynamics Research, Inc.,* 8 Ariz.App. 13, 442 P.2d 550 (1968). The amount secured by the pledge ($688.53) was untouched by the summary judgment.

Third, appellants argue that the value of the bonds at the time of the transaction was never established. We are persuaded by appellees' argument that the value of the bonds at the time of the pledge is irrelevant; what is crucial is the amount for which the bonds were redeemed, compared with the amount of indebtedness which the pledge secured, since this establishes the debtor's potential liability.

Having determined that the partial summary judgment was proper on the merits, we now consider whether it was procedurally proper for the motion to have been granted.

C. *The validity of partial summary judgments*

Appellants have raised the issue of whether a summary judgment can be granted on less than a whole claim. There would seem to be no real question about this, since the language of Rule 56(a), Rules of Civil Procedure, 16 A.R.S., speaks expressly of a summary judgment "upon all or any part" of a claim. However, the federal gloss is that this phrase must be read in conjunction with language from Rule 54(b)—"the court may direct the entry of final judgment as to one or more but fewer than all of the claims"—implying that no summary judgments as to less than a whole claim will be final, and concluding that partial summary judgments are disfavored. Thus, these cases do more than hold that a partial summary judgment is not appealable; they state that partial summary judgments are not allowed. *See* Comment, "Partial Summary Judgments under Rule 56(a)," 32 U.Chi.L.Rev. 816 (1965); Annot., "Propriety of summary judgment on part of single or multiple claims," 75 A.L.R.2d 1201· (1961).

D. *Distinguishing the federal cases*

The federal appellate courts have reversed partial summary judgments in circumstances in which the award seems eminently reasonable. In *Biggins v. Oltmer Iron Works,* 154 F.2d 214 (7th Cir. 1946), the plaintiff, a salesman, sued for compensation allegedly owing from the sale of five items. The district court granted a partial summary judgment as to two of the items about which there was no dispute, and the 7th Circuit held that the judgment was impermissible.

In *Commonwealth Insurance Co. of New York v. O. Henry Tent & Awning Co.,* 266 F.2d 200 (7th Cir. 1959), plaintiff O. Henry sued for $32,000 damages resulting from a fire. The insurance company offered $14,000, and the district court entered partial summary judgment for this amount. On appeal, the judgment was reversed.

What distinguishes these and most other similar cases from the present situation is that, in the federal cases disallowing a partial summary judgment, the appeal was taken immediately from the entry of the partial summary judgment. *Biggins, supra; O. Henry, supra; Coffman v. Federal Laboratories Inc.,* 171 F.2d 94 (3d Cir. 1948), *cert. den.,* 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949); *Repass v. Vreeland,* 357 F.2d 801 (3d Cir. 1966). Thus, the reviewing courts were deprived of the opportunity to consider the disposition of the *whole claim.* This is not the situation here, however, since (a) there was no separate judgment entered for the amount awarded pursuant to the Bohis' motion and (b) the partial summary judgment is being appealed as part of the entire claim before this Court.

Another distinction which is important is that execution was issued after the entries of partial summary judgment in both *Biggins* and *O. Henry,* but not in the instant case.

Therefore, any barrier to effective review which necessitated the federal holdings—the language in *O. Henry, supra,* condemns "piece meal litigation" and "fragmentations of a cause of action . . . obnoxious to the orderly administration of justice"—does not exist in this case. Thus, even though this partial summary judgment clearly split a claim, we can see no prejudice resulting to appellants under the circumstances of this case.

E. *Arizona cases*

There is no case authority in Arizona on this aspect of partial summary judgments. In *Madden v. Barnes,* 8 Ariz.App. 404, 446 P.2d 510 (1968), the appellant mortgaged certain real property, and the appellee was an accommodation maker. When appellant defaulted, appellee paid the principal and interest and sued to foreclose. Appellant denied that she had any power to execute a valid mortgage, since all or part of the property was held as community property. The trial court granted appellee's motion for partial sum-

mary judgment foreclosing the mortgage against the interest of appellant, but denied appellee's motion for attorney's fees. Appellee re-moved for partial summary judgment for attorney's fees, and the court granted the motion for an amount less than that sought in the first motion.

Appellant, among other assignments of error, challenged the trial court's discretion in granting the motion. Division 2 stated simply:

> Under Rule 54, the trial court has discretion to enter judgment as to a portion of the claim. We see no abuse of discretion in disposing of the controversies between Barnes and Becky Madden.

Although this result would appear to be inappropriate in view of our foregoing discussion, the opinion shows that the judgment actually did dispose of the entire claim as between appellant and appellee; as a result of that "partial summary judgment," appellant was out of the case. Although the executor of the estate of appellant's husband was joined in the action below, the rights of the appellee as against the estate remained to be determined and were not part of the claim decided. We are not persuaded that the illustrative case cited in *Madden, Pinkerton v. Pritchard,* 71 Ariz. 117, 223 P.2d 933 (1950), is authority for a contrary interpretation.

In *Brighton v. Superior Court,* 22 Ariz. App. 291, 526 P.2d 1089 (1974), Division 2 of our Court held that a partial summary judgment on the issue of dissolution was improper because under the statutes involved the trial court lacked jurisdiction to enter a decree of dissolution until all issues between the parties have been resolved. There is no indication in the opinion that the Court thought that "partial summary judgments" are inherently improper.

### F. *The determination of liability*

■ Appellants also argue that a partial summary judgment cannot determine damages while leaving the issue of liability unsettled. We do not think that this argument is properly made under the facts of this summary judgment.

In their motion, appellees said that, giving appellants the benefit of their best argument (i. e., the pledge defense), the appellants still owed appellees a minimum of $17,553.87. The theory upon which the trial court relied obviously was the pledge defense, since the amount of damages awarded was exactly the amount of damages requested in the motion.

By granting the motion, the court held that appellants' liability for the $17,553.87 was indisputable. It is true that an issue of liability remained as to the rest of the money which appellees claimed was theirs, but that liability was completely unrelated to appellants' liability as pledgees. This liability existed as a matter of law and could not be changed by any determination later made by the trier of fact.

Appellants' argument about liability seems to be related to their earlier argument about the splitting of claims, and we have already upheld that aspect of the summary judgment. For that reason, and because of the special nature of appellants' liability as pledgees, we hold that the partial summary judgment did not fail to settle the issue of liability.

### G. *The Rule 56(d) issue*

Appellants claim error in the court's failure to "make an order specifying the facts that appear without substantial controversy" as required by Rule 56(d). Appellees argue that this was not a "practicable" action for the court at the time of the rendering of the summary judgment. The Bohis' motion for partial summary judgment was filed on October 3, 1973. The Kelmans' response was filed on October 12, the date on which the motion was taken under advisement. The motion was granted in chambers on October 16, just before counsel went in to voir dire the jury; the Kelmans on this same date filed an answer to the Bohis' reply.

■ The issue is really whether the Kelmans were prejudiced by the failure of

the trial court to make an order. The requirement of an order is not mandatory, but neither is it an empty formality; it should be made unless impracticability clearly makes the order more of a burden than a benefit. Moore states:

> Subject only to the qualification that compliance is practicable, and *usually it will be,* [Rule 56(d)] puts a compulsory duty upon the trial court to make a pretrial order that formulates the issues. [6 *Moore's Fed.Prac.* ¶ 56.20[3.–3]. Emphasis added.]

A determination whether compliance is practicable would have to be within the trial judge's discretion.

■ Was this an abuse of discretion? There is little doubt that an order would have been inconvenient in this case, since a venire already had been empaneled and was waiting the trial of the remaining issues. However, on the Kelmans' behalf, it might be argued that it was an abuse of discretion for the court to have waited until this eleventh hour before deciding the Bohis' motion. We do not reach this issue since the appellants made no objection, when the partial summary judgment was granted, to the tardiness of granting the motion. Therefore, we consider only the limited question of the need of the court to enter a written order pursuant to Rule 56(d).

■ On this ground, the appeal does not seem to have much merit. First, the discussion in chambers served to limit the issues to be tried; this is the exact purpose of the Rule 56(d) order. Second, no objection was made to the failure of the trial court to make an appropriate written order. Third, as appellees pointed out in their answering brief, appellants do not demonstrate how they may have been prejudiced by the absence of the order. They speak only in general terms about the denial of a fair trial, a labyrinth of confusion and uncertainty, and sham proceedings; they provide no specific instances. They view Rule 56(d) as a mandatory rule, noncompliance with which automatically requires reversal. We do not view the Rule as being so strict.

Therefore, we hold that under the circumstances of this case the granting of partial summary judgment does not constitute reversible error.

## II. FAILURE TO DIRECT A VERDICT ON COUNT III

Appellants next argue that the trial court erred in refusing to direct a verdict on that count of appellees' complaint which alleged fraud. Appellants claim that there was no evidence of two of the nine elements of fraud, namely the existence of a representation and the falsity thereof.

■ The trial court can direct a verdict only where no evidence has been introduced which would justify a reasonable person in returning a verdict in favor of the other party. *City of Phoenix v. Brown,* 88 Ariz. 60, 352 P.2d 754 (1960).

■ We find that sufficient evidence on these two elements was introduced. Bohi testified that Kelman had told him that he might be interested in buying the bonds. This is adequate to support the existence of a "representation." The fact that appellants ended up with the bonds and paid appellees nothing for them, constitutes evidence of the falsity of the representation.

Therefore, it was proper for the trial court to refuse to direct a verdict with respect to appellees' claim of fraud.

## III. ALLOWING THE ISSUE OF PUNITIVE DAMAGES TO GO TO THE JURY

■ Appellants claim that the question of punitive damages should not have been allowed to have gone to the jury. The jury can consider the question of punitive damages only where there is evidence of malicious, reckless, or wanton behavior. *Hunter Contracting Co. v. Sanner Contracting Co.,* 16 Ariz.App. 239, 492 P.2d 735 (1972).

■ We find that the evidence adduced at trial supported the court's decision to al-

low the jury to consider punitive damages. Appellees' testimony concerning the circumstances of the transaction showed behavior which was suitably intentional and malicious to support the jury's consideration of this issue.

## IV. FAILURE TO STRIKE BOHI'S TESTIMONY

Appellants argue that the trial court erred in failing to strike the "obviously perjured" testimony of Jacob Bohi. Appellants contend that statements made by Bohi in an earlier superior court suit contradicted statements made by Bohi in this trial; the degree of contradiction is so great, appellants claim, that the trial court was required to hold that Bohi was unworthy of any belief.

In the earlier trial, an action by the Evening Light Crusade for Christ, Inc., against both Bohi and Joseph, Bohi testified that he never owned any bonds. Appellants say that this is inconsistent with his testimony in this suit that he was the owner of the bonds. Appellees reply by saying that Jacob Bohi was testifying truthfully in both suits since, at the time of the first testimony, Bohi assumed that he did not own the bonds since they were being sold to appellants.

■ We hold that the inconsistencies in Bohi's testimony would not warrant a striking of the testimony. Although it may be proper to strike testimony in some extreme circumstances, *cf. Keys v. State*, 55 Ariz. 24, 97 P.2d 736, *reh. den.*, 55 Ariz. 127, 99 P.2d 86 (1940), the situation here presents only a case, at best, of inconsistencies going to the weight of the evidence. Thus it was not error for the court to deny the motion to strike Jacob Bohi's testimony.

## V. FAILURE TO REQUIRE APPELLEES TO ELECT A REMEDY

■ Next, appellants claim that the court erred in failing to require appellees to elect between a remedy in contract and a remedy in tort for fraud. Appellees correctly note that appellants' transcript cita-

tion does not reveal the existence of a motion requiring an election to be made. Therefore, this question is waived on appeal.

## VI. EXCESSIVENESS OF THE VERDICT

Appellants also claim that the verdict was excessive and the result of bias, passion, and prejudice.

According to the judgment, appellees were awarded $17,553.87 on their motion for partial summary judgment and $11,001.-53 in compensatory damages from the jury. Appellees offered to remit the jury verdict to $9622.50, which was accepted by the court and incorporated into the judgment. In addition, the jury awarded appellees $25,000 in punitive damages, so that the total award was $52,176.37.

■ In their complaint, appellees used the figure of $25,000 as an expression of the minimum amount of compensatory damages which they sought, although in Counts Four and Six they presented $29,000 as the figure which Joseph said Kelmans would pay for the bonds. The Kelmans redeemed all the bonds for a total of $25,055.66. The compensatory damages awarded to appellees, from both the summary judgment and the jury's verdict, amounted to $27,176.37. Therefore, we are not able to see how the jury verdict was excessive, especially in view of the remittitur.

■ Appellants argue that the amount of compensatory damages awarded by the jury, $11,001.53, bore no relationship to the instructions. This is the amount (within three cents) which appellees' counsel told the jury in his summation that he sought as compensatory damages. Under appellees' fraud theory, and the court's instructions on the amount of damages recoverable for fraud, this amount could have been determined by the jury to have been the amount by which appellees were damaged by appellants' behavior.

■ Appellants also claim that no evidence of wanton, reckless, or malicious ac-

tion existed to warrant an award of punitive damages. Having determined earlier that there was sufficient evidence to allow the issue of punitive damages to go to the jury, we hold that this same evidence, if believed, as it obviously was, supports the award.

■ Finally, appellants argue that the verdict was the product of bias, prejudice, and passion. Appellants' financial statements and tax returns, showing appellants' wealth, had been admitted into evidence; appellants argue that this evidence moved the jury to make a large award to appellees solely because of appellants' financial worth, when no other evidence supported the grant of punitive damages. Since we already have held that the evidence supported the jury's finding of bad conduct, since punitive damages were properly being sought, and since a defendant's financial worth is relevant when punitive damages are being assessed, there was no error here. *Thoresen v. Superior Court,* 11 Ariz.App. 62, 461 P.2d 706 (1969).

## VII. THE SUFFICIENCY OF THE EVIDENCE

Appellants contend that the evidence was not sufficient to have allowed the case to go to the jury, since appellees' only evidence of *conversion* or *contract* consisted of Bohi's testimony.

There was sufficient evidence of *fraud* for the case to have gone to the jury, and, since the jury's award is consistent with a finding of fraud, it is not necessary for us to reach this question.

## VIII. THE FAILURE TO GIVE INSTRUCTIONS

Next, appellants argue that the court erred in failing to give Instructions 20, 21, 22 and 23. Instruction No. 20 said that one who receives bearer bonds to secure a debt has no duty to inquire about the transferor's title. Instruction No. 21 said that the possessor of a bearer instrument can pass good title even against the owner of the instru-

ment. Instruction No. 22 said that a bearer instrument is negotiated by delivery. Instruction No. 23 said that the adequacy of consideration of a bill or note, when compared to the amount of the order or promise, is immaterial.

■ We find, without determining whether it is a correct statement of law, that Instruction No. 20 presents an irrelevant matter. It addresses the problem of the title to the bonds, and does not concern itself with the problem presented by this appeal—adverse claims against the bearer bonds, without regard to the question of the passage of title.

Instruction No. 20 is based upon the official comment to UCC § 9–112 [A.R.S. § 44–3112]. Appellants' counsel quote from the comment to UCC § 9–112, but we find two sentences which were not quoted to be dispositive of this point:

> [The section] does not purport to cut across the law of conversion or ultra vires. Whether a person who does not own property has authority to encumber it for his own debts and whether a person is free to encumber his property as collateral for the debts of another, are matters to be decided under other rules of law and are not covered by this section.

Instructions No. 21 and 22 were faulty for the same reason: they attempted to cloud the issue of appellees' claims against the bonds by raising the irrelevant issues of title and negotiation. Instruction No. 23 similarly presented an irrelevant matter by discussing the consideration passing between Joseph and appellants, when that transaction was not the subject of the lawsuit.

For these reasons, the court did not err in refusing to give the instructions.

## IX. THE FAILURE OF THE COURT TO GIVE SEPARATE VERDICTS TO THE JURY

Appellants claim that it was error for the court to utilize general verdict forms,

for or against appellants, or for or against Joseph, instead of separate verdicts on each of the counts for each of the affected defendants. Appellants argue that they timely requested separate verdicts.

■ However, since the record shows that appellants did not also submit their desired forms of verdict to the court as required by the Rules, we hold that they waived their right to raise this issue on appeal.

In *Nagle v. Conger,* 10 Ariz.App. 91, 456 P.2d 411 (1969), appellants complained about the form of verdict. The Court said:

> . . . appellants had an opportunity to submit their desired forms to the court, and having failed to avail themselves of the opportunity, and having failed to object to the forms of verdict submitted, they cannot complain. 10 Ariz.App. at 95, 456 P.2d at 415.

■ In further support of this position, we note that Rule VIII(b), Uniform Rules of Practice of the Superior Court of Arizona, 17A A.R.S., requires special interrogatories to be submitted in written form in advance of trial:

> Unless otherwise directed in the pretrial order, counsel shall, prior to the commencement of a jury trial, submit to the trial judge an original and one copy of all instructions and interrogatories which counsel intends to request the court to submit to the jury. Counsel shall be deemed to have waived request for other instructions and interrogatories, except those which could not reasonably have been anticipated prior to trial.

The function of special interrogatories and special verdicts is similar; *cf.* Rule 49(g), which discusses these two forms of findings together. Therefore, it is essential that the party claiming error in the court's refusal to use separate verdict forms, have submitted the requested forms to the court and have objected to the court's decision not to submit them to the jury, in order to preserve this issue on appeal.

No verdict forms having been presented by appellants, this alleged error will not now be considered.

## X. MISCONDUCT OF APPELLEES' COUNSEL

Appellants argue that several instances of misconduct of appellees' counsel warranted the granting of a mistrial.

First, appellants claim that appellees' counsel improperly argued in his summation that federal law required appellants to disclose the acquisition of the bonds on appellants' 1972 federal income tax return, when no expert testimony on this subject had been adduced and when no instruction had been requested.

We disagree that this is what was said, although we do agree that this was error. Appellees' counsel did not state that appellants had not shown the acquisition of the bonds on their tax return for 1972; rather, the record shows that he said the appellants had not reported any income from the bonds during 1972.

■ However, it was improper for counsel to comment on the tax returns in this manner, since they had been admitted for the limited purpose of showing appellants' wealth with respect to appellees' claim for punitive damages. Despite this, however, we do not believe that this error warrants a reversal of the judgment. It has been stated that:

> [t]he granting of a new trial because of the misconduct of counsel in closing argument is only sparingly granted. It should never be granted for a disciplinary measure, but only to prevent a miscarriage of justice. *Anderson Aviation Sales Co., Inc. v. Perez,* 19 Ariz.App. 422 at 429, 508 P.2d 87 at 94 (1973).

Our review of the record shows that there was no miscarriage of justice here.

■ Second, appellants contend that it was improper for appellees' counsel to tell

the jury that the Arizona Bank, as the collecting bank, could not lend money on the bonds. Appellants had argued in summation that the bonds were worthless and illustrated this point by remarking that Joseph was unable to obtain a loan on the bonds from the Arizona Bank. Appellants' counsel also noted that the Arizona Bank was the depository of the church's funds which were to be used for bond redemption; counsel said, " . . . there is nothing more secure to the bank for making a loan than their own money."

In rebuttal summation, appellees' counsel said:

> . . . I suggest to you that we don't have here now, whether the bank had authority within its own corporate charter to make loans on collateral in which it had an interest as sort of a trustee to collect for and I would rather imagine they would not have the authority to use that as collateral.

This was not an improper comment on law. It was merely a speculative remark and did not purport to be authoritative; it only suggested to the jury that the reasons advanced by appellants' counsel might not be the only reasons why a depository bank would not advance money on its own funds. It was responsive to appellants' argument and was therefore proper summation.

Third, appellants argue that appellees' counsel again misinstructed on the law when he told the jury that "Judge Doyle will tell you that a conversion includes the unauthorized exercise of dominion . . . . " The court had rejected an instruction which began in that manner in favor of an instruction which defined that tort as "the unauthorized and wrongful exercise of dominion . . . . "

■ Although we cannot condone a misstatement of the instructions of law, we feel that it was insignificant error here. The court instructed that counsel's arguments are not evidence and gave the jury the proper instruction on conversion.

■ Finally, appellants contend that appellees' counsel argued facts not in evidence by (a) mentioning that Joseph and Jacob Bohi were still friends, (b) saying that Joseph was named as a defendant at counsel's insistence in order to obtain his testimony, and (c) remarking that Joseph's wife was "out" because "we don't have any reason to believe she has enough assets to satisfy a judgment anyway."

We have reviewed the closing arguments and hold that the remarks noted above were made in rebuttal to comments in appellants' closing argument which suggested collusion between appellees and Joseph.

## XI. THE GRANTING OF APPELLEES' MOTION IN LIMINE

Mention has been made of an action by The Evening Light Crusade for Christ, Inc., against Bohi and Joseph which was tried before the trial in this case. Appellees moved in limine to exclude the use of the record and transcript from that action, except for impeachment through prior inconsistent statements. Appellants' final point on appeal is that the court committed error in granting the motion.

■ Appellants claim that they needed to develop the testimony from the earlier litigation more fully for the jury in order to show the parties' states of minds. Appellants did use some of Jacob Bohi's prior testimony for impeachment purposes; they could not use any of the testimony for the purpose for which they state because of its nature as hearsay. Therefore, we think that the court's ruling was proper. Moreover, the dispute in that case was irrelevant to the causes of action being urged in this instance.

■ Appellants argue that appellees were able to ignore the limiting motion and develop issues which were in dispute in the first action. Although no specific references to the transcript are given in their brief, appellants seem to argue that appel-

lees' cross-examination of certain of appellants' witnesses, including the pastor of the then-inactive Evening Light Crusade for Christ, Inc., necessitated the court's enlarging the scope of reference to the prior trial. We feel that the court correctly characterized the thrust of appellees' cross-examination as establishing the witnesses' motives for testifying, or their truth and veracity. The fact that these matters also could be related to the prior trial, does not convince us that the court erred in refusing to rule that appellees had opened the door to a full investigation of the nature and outcome of the prior lawsuit.

The judgment is affirmed.

HAIRE, Chief Judge, Division 1, and JACOBSON, P. J., concur.