216 P.2d 387

INGALLS et al. v. NEIDLINGER.
No. 5l200.

Supreme Court of Arizona.
March 27, 1950.

42

Evans, Hull, Kitchel & Jenckes, Jos. S. Jenckes, Jr., of Phoenix, attorneys for appellants.

Emmett R. Feighner, of Phoenix, attorney for appellee.

UDALL, Justice.

The questions raised by this appeal are directed to the correctness of the trial court's rulings on matters of pleading, i. e., the striking of parts of defendants' answers and cross complaints, which rulings are entwined with the primary problem of the correctness of granting plaintiff's motion for summary judgment against both defendants.

This action was instituted by Earl W. Neidlinger, as plaintiff (appellee) against A. G. Ingalls and E. A. Moore, defendants (appellants). Since the institution of this appeal, E. A. Moore has died and upon stipulation and by order of court Clara E. Moore, the administratrix of his estate, has been substituted as party appellant. While the defendants in the lower court appeared by the same counsel, they answered separately. However, their pleadings throughout are so nearly identical that we shall, in the interest of brevity, treat them as being the same. The purpose of the suit was to recover the sum of $3259, with interest and attorney's fees, alleged to be due under the terms of a certain written contract entered into between the parties on February 6, 1947.

The contract provided for the sale and assignment from plaintiff to defendants of 96 shares of the capital stock of Fabricantes Madereros Della Rocca, S. A., a corporation, (hereinafter referred to as the Mexican Lumber Company) and the payment therefor by the buyers to the seller of the sum of $6,059.00 in installments of $700.00 per month, commencing May 1, 1947. Paragraph "3" of the contract reads as follows: "3. That the party of the first part (appellee) hereby agrees that he will not institute any legal proceedings and that he will not instigate any other person, either directly or indirectly, to file any action of a legal nature against either or both parties of the second part (appellants), particularly as to any action in regard to the International Life Insurance Company. The party of the first part further agrees that in the event he violates the aforesaid provision by instituting such proceedings or instigating others to institute such proceedings following the date hereof, then the parties of the second part shall be relieved of their obligations to complete the payment of such balance as may then be owing, and in such event the parties of the second part shall return to the party of the first part that portion of the stock which is unpaid for at such time. Said stock so to be returned shall be valued on the same basis as purchased."

The defendants by their original answer admitted execution of the contract, but alleged that the same was obtained under the duress of threatened criminal prosecution. This defense was stricken upon plain-

tiff's motion. Counter-claims were also filed to recover back the $1400.00 that each defendant had paid under said contract, defendants alleging that said payments were obtained by duress, intimidation and undue influence as a result of plaintiff's threats to have criminal proceedings instituted against said defendants. Plaintiff's motions to strike (or to dismiss) the counter-claims were granted by the lower court. An amended answer was then filed which alleged in effect that the contract sued upon was void as against public policy and good morals because it involved an agreement not to prosecute a crime. A motion to strike this defense was also granted. The defendant Ingalls also filed a motion to dismiss the plaintiff's complaint on the ground that it failed to state a claim upon which relief could be granted. This motion was denied.

Plaintiff then filed motions for summary judgment against both defendants for the relief demanded in his complaint, (except with respect to the amount of attorney's fees) and in support of such motions, filed affidavits of himself and four other parties. These affidavits are generally to the effect that the parties to this suit were officers and members of the board of directors of International Life Insurance Company of Phoenix; that this company was in financial difficulties due to depleted surplus and reserves; that numerous conferences were held between plaintiff, defendants and others to try and find a way out of their diffi-

culties; that the parties were in disagreement as to the manner in which the affairs of the International Life Insurance Co. had been managed as well as to the wisdom of reinsuring the business of said company with a Texas Company; that there was also differences between them with respect to defendants' activities and affairs in the Mexican Lumber Company in which stock had been sold by defendants to plaintiff. Finally the affidavits recite that to settle their differences the contract of February 6, 1947, was entered into. It is specifically stated in these affidavits that at no time did plaintiff threaten to institute criminal proceedings against defendants or accuse them of criminal acts, and that all references in said contract to plaintiff instituting or instigating others to institute any "legal proceedings" against defendants had to do solely with civil proceedings and had no reference to a criminal proceeding.

In opposition to plaintiff's motion for summary judgment an affidavit was filed by defendant E. A. Moore to the effect that the plaintiff in the presence of defendants threatened to institute criminal proceedings against the latter unless they would enter into the contract to purchase plaintiff's stock in the Mexican Lumber Company; that said stock was worthless and known by the parties to be worthless; that the contract was finally signed by the defendants under duress of threatened criminal prosecution.

■■ The lower court by minute order dated February 13, 1948, granted plaintiff's

motion for summary judgment against defendant Moore, and on March 22, 1948, granted a similar motion against defendant Ingalls. On the last mentioned date, the court fixed attorney's fees in the sum of $500 and ordered that judgment be then entered for plaintiff against both defendants. A formal judgment to this effect was signed and entered on March 25, 1948. The defendants on May 20, 1948, filed joint notice of appeal from this judgment. Plaintiff-appellee moves to dismiss the appeal as to appellant Moore on the ground that his appeal was not timely. Section 21-1801, A.C.A.1939. There is no merit to this motion. We hold that the order of February 13, 1948 for a partial summary judgment against Moore was never intended as a rendition of a final judgment within the meaning of Sec. 21-1702(1), A.C.A.1939 and hence was not appealable. Cashion v. Bunn, 9 Cir., 149 F.2d 969. See also Gillespie Land & Irr. Co. v. Buckeye Irr. Co., 69 Ariz. 367, 213 P.2d 902, 905. While that case did not involve a summary judgment it is analogous on the question of the lack of intent to enter judgment, as we there held that " * * * no entry of an 'order' amounts to a judgment or an order for judgment until the court specifically 'directs' the clerk to enter judgment as prescribed by Section 21-1230, supra." At most this Order of February 13, 1948 was merely an unappealable preliminary or interlocutory order. This is further evidenced by the fact that the Clerk, on this order, made no notation of judgment being entered in the civil docket as required by Sec. 21-1910, A.C.A.1939. See Sligh v. Watson, 67 Ariz. 95, 191 P.2d 724. Furthermore at that stage there remained for determination the matter of attorney's fees, if any, chargeable to both defendants as well as the disposition of a similar motion for summary judgment against his co-defendant Ingalls. Under the contract sued upon the liability of the defendants was joint and several. Under such circumstances the rule stated in 2 Am.Jur., Appeal and Error, Sec. 27, is applicable: "As a general rule, a judgment or decree is not final which settles the cause as to a part only of the defendants. * * *" This statement was quoted with approval by us in the case of Beavers v. Beavers, 55 Ariz. 122, 99 P.2d 95. The purpose of the rule providing for partial summary judgments, Sec. 21-1213, A.C.A.1939, was to speed up the trial by eliminating what were not deemed proper issues. We had no intention in the adoption of this rule to make such a partial summary judgment final and appealable. A contrary holding would result in delay and waste of time in appealing piecemeal rather than waiting, as was properly done in the instant case, for a final judgment disposing of all controverted issues between the parties to the suit before filing notice of appeal. Leonard v. Socony-Vacum Oil Co., 7 Cir., 130 F.2d 535. See also Beavers v. Beavers, supra, wherein we held that the rule of liberality in permitting appeals by aggrieved parties should not be extended so as to permit a party to

take his case piecemeal to the appellate court, when all of the questions involved may be heard upon a single appeal.

■■■ We shall now consider the assigned errors. The first is that the trial court committed prejudicial error in striking from defendants' original answers paragraph II, which reads in part: "* * * the plaintiff accused defendants E. A. Moore and A. G. Ingalls of having committed criminal acts, and plaintiff threatened to have criminal proceedings instituted against defendants unless defendants agreed to purchase, * * *; that by reason of the aforesaid threats, defendants were intimidated and because of, said threats and the duress exerted by plaintiff, the defendants executed the contract described in plaintiff's complaint, * * *."

The better and more modern rule of law is to the effect that a contract which is induced by threats of criminal prosecution is invalid and unenforcible. In Restatement of the Law of Contracts, Par. 492, duress is defined as follows:

"(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

"(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reason-ably have been expected to operate as an inducement."

and in Par. 493, id., these additional statements appear:

"* * * Duress may be exercised by * * * (b) imprisonment, or threats of imprisonment, except where imprisonment brought about or threatened is for the enforcement of a civil claim, and is made in good faith in accordance with law, * *.

    *      *      *      *      *      *

"* * * (e) any other wrongful acts that compel a person to manifest apparent assent to a transaction without his volition or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction.

    *      *      *      *      *      *

"Comment on Clause (b):

    *      *      *      *      *      *

"d. A threat of criminal prosecution is not in terms a threat of imprisonment, but in effect it ordinarily is a threat of imprisonment and also, irrespective of whether the prosecution is likely to be followed by imprisonment, it is a threat of bringing disgrace upon the accused. Threats of this sort may be of such compelling force that acts done under their influence are coerced, and the better foundation there is for the prosecution, the greater is the coercion."

Some of these sections were quoted in the case of Lundvall v. Hughes, 49 Ariz. 264, 65 P.2d 1377, although the factual sit-

46

uation was different than here. We have repeatedly stated that where not bound by previous decisions of this court or legislative enactment we will follow the Restatement of the Law. Waddell v. White, 56 Ariz. 525, 109 P.2d 843, and cases therein cited.

■ It is elementary that a contract induced by duress is unenforcible. Sec. 495, Restatement of the law of Contracts, reads in part: "* * * Where the duress of one party induces another to enter into a transaction, the nature of which he knows or has reason to know, and which he was under no duty to enter into, the transaction is voidable against the former and all who stand in no better position, * * *."

In 17 C.J.S., Contracts, § 175, the rule is stated: "* * * While the mere threat of criminal prosecution is not regarded as duress under the common-law rule, considered supra § 172, under the modern rule duress invalidating a contract may properly be predicated on a threat of criminal prosecution, and this is true, although execution of the threat would not have been illegal or actionable. Threats of criminal prosecution inducing a contract are ordinarily regarded as duress irrespective of the innocence or guilt of the victim, * * *."

In Coleman v. Crescent Insulated Wire & Cable Co., 350 Mo. 781, 168 S.W.2d 1060, 1067, the Supreme Court of Missouri states: "* * * Duress exists when a person is by threats of criminal prosecution deprived of his own free will and agency and thereby induced to make a contract or perform some act that he would not otherwise have made or performed. * * *"

■ The plaintiff does not seriously challenge the soundness of these principles of law but rather seeks to escape the effect of same by contending that the defense of duress by threats of criminal prosecution was abandoned in the amended answer. It is obvious that the defendants had no alternative other than to omit the stricken allegations in preparing the amended answer hence they cannot now be charged with abandoning a defense which was deleted by order of the court. The stricken pleading constituted a good and sufficient defense. Whether the contract was actually so induced, and whether the threats of prosecution were sufficient to cause that degree of fear which would induce a person of ordinary firmness to yield, was a matter to be established by the evidence. Kline v. Kline, 14 Ariz. 369, 128 P. 805. We hold that the trial court's ruling striking this affirmative defense was reversible error.

■ The counter-claims filed by the defendants, which were ordered stricken by the court, specifically alleged that the payments theretofore made on the contract "were made without any consideration, but were obtained from defendants by duress, intimidation and undue influence". The same authorities heretofore cited in support of the proposition that a

contract which is induced by threats of criminal prosecution is invalid and unenforcible would by analogy tend to support the legal proposition that sums paid under duress of threatened criminal prosecutions may be recovered. In 40 Am.Jur., Payment, Sec. 161, the applicable rule is stated in these words: " * * * It is firmly established that provided the compulsion furnishes the motive for the payment sought to be recovered, and proceeds from the person against whom the action is brought, illegal payments coerced under duress or compulsion may be recovered in an action for money had and received to the plaintiff's use. * * * " Defendants were entitled to an opportunity to prove by competent evidence the allegations of their counterclaims. The trial court erred in denying them this right by granting plaintiff's motion to strike the same.

■ Defendants contended by their motion to dismiss the plaintiff's complaint and by the allegations (par. 2) of the amended answers that the contract sued upon, particularly Par. "3" supra, constituted an agreement not to institute criminal proceedings and that hence said contract was illegal upon its face. The trial court in denying defendants' motion to dismiss plaintiff's complaint and in granting plaintiff's motion to strike Par. 2 of the amended answer, held, and we think properly so, that the contract was not void upon its face. We are of the view that at most the contract, as to this feature, might be considered ambiguous and therefore would require parol evidence as to what was actually meant by the terms "legal proceedings" and "actions of a legal nature". We are not prepared to hold as a matter of law that either of these two terms necessarily include a criminal prosecution. The defendants, if they see fit, are of course entitled to plead inconsistent defenses. Sec. 21-408, A.C.A.1939.

■ Had the trial court correctly interpreted the defendants' pleadings there was the issue of duress or illegality of contract to be tried. It was not a case for summary judgment. Even the affidavits in support and in opposition to plaintiff's motion for summary judgment were sharply in conflict. The basic essentials for the granting of a summary judgment were recently covered very fully in the case of Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123, 126. We there pointed out that the power to enter such a judgment *must be exercised with care and not extended beyond its just limits.* It was there stated that in determining a motion for summary judgment, " * * * *The court is not authorized to try the issue, but is to determine whether there is an issue to be tried. * * * "* (Em.Sup.)

The judgment is reversed with directions to reinstate the original answers and counterclaims and for a trial on the merits.

Reversed with directions.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.