700 P.2d 1369

**The STATE of Arizona,
Appellee/Cross-Appellant,**

v.

**Royce Calvin SANDS, II,
Appellant/Cross-Appellee.**

**No. 2 CA–CR 3075.**

Court of Appeals of Arizona,
Division 2.

Jan. 8, 1985.

Reconsideration Denied Feb. 22, 1985.

Review Denied April 23, 1985.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee/cross appellant.

Alex A. Gaynes, Tucson, for appellant/cross appellee.

## OPINION

BIRDSALL, Chief Judge.

On January 21, 1983, a jury convicted appellant Royce Sands II of the following: Count I, Assault, a Class 1 misdemeanor; Counts IV, V, X, XI, XII, and XIV, Aggravated Assault, Class 3 felonies; Counts VI and VII, Kidnapping, Class 3 felonies; Count VIII, Resisting Arrest, a Class 6

felony; and Count XV, Unlawful Possession of Marijuana, a Class 6 felony.[1] He was sentenced to six months in jail for the first assault conviction, one and one-half years in prison for the two Class 6 felonies and given ten year sentences for each of the other eight felony convictions. All ten prison terms were to be concurrent and all were consecutive to the six-month jail term.

All charges arose from a six-day episode in May 1982. The basic facts are that overnight May 13–14, appellant assaulted his pregnant wife. She escaped from their mobile home and a neighbor took her to Kino Hospital where she was treated for her injuries. The assault was reported to the Pima County Sheriff's office and charges were filed against her husband.

When officers sought to arrest appellant on May 14, he reacted violently. Thus began a hostage/barricade situation, in which appellant's four children were in the home with him and he threatened the use of weapons against anyone trying to arrest or remove him from the home. The county S.W.A.T. team was called in and the hostage negotiation team went into service. Late in the evening, following several hours of telephone conversations with the appellant, one of the negotiators was permitted to approach the home to ascertain that the children were alive and uninjured.

Upon determining that they were, the S.W.A.T. team and the negotiators withdrew. Telephone conversations continued over several days, but the appellant and children did not leave the home. On May 19, under pretense of consulting with appellant concerning charges of improper activities by sheriff's officers, Sheriff Clarence Dupnik and a deputy, Stan Cheske, together with appellant's then-attorney,[2] entered the home with the intention of arresting appellant. During that encounter, appellant at all times possessed a firearm. The children were also in the home at the time. Sheriff Dupnik agreed, after consulting with a justice of the peace, to give "immunity" to the appellant, purporting to hold him harmless for all activities which had transpired up to that time. This agreement took the form of a witnessed document written and signed by Dupnik.

Shortly after the sheriff, deputy, and lawyer left the home, another deputy grabbed one of appellant's children playing outside the home, appellant ordered his dog to attack the officer, and another deputy shot and killed the dog. Appellant then began firing rounds from his home at deputies in the area and into a home nearby where a command post had been established. No other shot was fired by the officers until near dark when one of them attempted to shoot out a porch light on the home and failed. S.W.A.T. officers had been recalled to the home when the shooting broke out and telephone conversations between appellant and the negotiator continued until darkness, when appellant finally surrendered.

On appeal appellant cites the following as errors: I) The admission of testimony and tapes of the conversations between appellant and the hostage negotiator, Kevin Gilmartin, a psychologist; II) Refusal to dismiss the charges on the basis of the sheriff's guarantee of immunity to appellant; III) Jury misconduct; IV) Submitting four of the aggravated assault counts to the jury; V) Refusal of the appellant's requested self-defense instructions, and VI) that governmental misconduct, specifically that of the sheriff and magistrate and appellant's counsel, deprived appellant of due process.

The state cross-appeals from the sentence on the issue of whether the court erred in finding that some of the events were committed on the same occasion and therefore could not be treated as prior convictions pursuant to A.R.S. § 13–604(H) (1984 Supp.).

---

1. Our reference to the count numbers is always to the number assigned when the multiple counts in each of the two consolidated cases were renumbered.

2. This attorney did not represent him at trial. Trial counsel does represent him on appeal.

## I

Appellant first argues that the evidence concerning his conversations with Dr. Kevin Gilmartin, including tape recordings of the conversations which occurred over several days, should have been ruled inadmissible.

Appellant argues three theories which he claims ought to have mandated suppression of the conversations. Two of these, that the statements he made were involuntary and that he was entitled to *Miranda* warnings, may be summarily rejected. Appellant was at no time in custody at the time of making the statements to Gilmartin. The United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) set forth the following:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612.

We cannot find that a man in his own home, possessing weapons, food, and supplies, with a vehicle at his disposal, a telephone, and resisting arrest can be said to be in custody. There was no error in the denial of appellant's motion to suppress on this ground.

A separate voluntariness hearing was conducted to determine whether appellant's statements were voluntary. On January 6, 1983, the first day of trial, the judge ruled that the statements were voluntarily and freely made, denying the motion to suppress on that ground. The trial court, in determining whether incriminating statements are freely and voluntarily made, must examine the totality of the circumstances. Its determination will not be upset on appeal absent clear and manifest error. *State v. Hein,* 138 Ariz. 360, 674 P.2d 1358 (1983). Nothing suggests appellant's statements to Gilmartin were anything but voluntarily made. In fact the appellant initiated some of the phone calls himself.

A more difficult issue concerning the conversations with Gilmartin involves a claim of psychologist-client privilege. A.R.S. § 32–2085 (1984 Supp.Pamph.) provides:

"The confidential relations and communications between a psychologist certified as provided in this chapter ... and his client are placed on the same basis as those provided by law between attorney and client. Unless the client has waived the psychologist-client privilege in writing or in court testimony, a psychologist shall not be required to divulge, nor shall he voluntarily divulge, information which he received by reason of the confidential nature of his practice as a psychologist, except that he shall divulge to the board any information it subpoenas in connection with an investigation, public hearing or other proceeding. The psychologist-client privilege shall not extend to cases in which the psychologist has a duty to report nonaccidental injuries and physical neglect of minors as required...."

Gilmartin was a psychologist employed by the Pima County Sheriff's office as a psychologist. He has a doctorate in clinical psychology from the University of Arizona and is a certified psychologist. As an officer of the sheriff's department, he was involved in hostage negotiation situations and, prior to involvement in the present case, had participated in some 30 hostage or barricade situations. On May 14, 1982, Gilmartin was initially brought into this situation and from a house next door to appellant's conversed by telephone with him. Some of the conversations were both monitored by other officers and tape recorded by Gilmartin. In all, appellant and Gilmartin talked by telephone for over 20 hours. One of the longest periods of conversation was approximately six hours on the first day, May 14, after Gilmartin first convinced appellant to stay on the line with him and talk. The purpose of his participation was to defuse what appeared to be a volatile and dangerous situation for appellant's children in the mobile home and for officers outside the home. He testified that the purpose of hostage negotiation is

to calm and soothe the hostage-taker and to bring about a peaceful resolution of the confrontation.

In order for any privilege to exist it is necessary that the relationship of psychologist-client be established. Because the statute places the privilege on the same basis as that of attorney-client, we look to the cases involving the latter for authority. With reference to the attorney-client privilege, whether such a relationship has been created is a question to be decided by the trial judge. *Lietz v. Primock*, 84 Ariz. 273, 327 P.2d 288 (1958). The determination is to be made in consideration of all the circumstances surrounding the privilege. *United States v. Kovel*, 296 F.2d 918 (2d Cir.1961). The burden of showing the relationship, the confidential character of the communication, and other necessary facts, is that of the party claiming the privilege. *United States v. Kovel*, supra. The determination made by the trial court is conclusive absent an abuse of discretion. *Heffron v. Los Angeles Transit Lines*, 170 Cal.App.2d 709, 339 P.2d 567 (1959). See also *State v. Sturgis*, 113 Ariz. 311, 553 P.2d 665 (1976) (doctor-patient privilege). With regard to the doctor-patient privilege, our Arizona Supreme Court has said:

"In the case at bar, Steelman claimed that it had been his understanding during each interview that the doctors were treating him for his withdrawal symptoms. The doctors, on the other hand, testified that they made it clear that they were psychiatrists sent by the District Attorney's Office. The question of the existence of the doctor-patient privilege therefore was one of the credibility of the testimony. The admissibility of evidence turned on the trial court's determination of the credibility of testimony and was within the discretion of the trial court. Absent abuse, such discretion will not be overturned on appeal."

*State v. Steelman*, 120 Ariz. 301, 317, 585 P.2d 1213, 1229 (1978).

The question of privilege or no privilege was presented to the trial court in a motion to suppress. Both Gilmartin and the appellant testified. Gilmartin testified that the very first thing he told the appellant was that he had been called in by the police, that he worked primarily for the sheriff, that their talks were not confidential and he was discussing them with other people, and that the conversations were taped. The first conversation was on Friday. On Saturday and Sunday the calls were initiated by the appellant. He could not find Gilmartin's number in the phone directory so he called the sheriff's office. He then talked to Gilmartin while Gilmartin was at home. These calls were not recorded. The appellant told Gilmartin he had consulted his attorney who told him that Gilmartin was on the sheriff's staff. In view of all this evidence we believe the claim of privilege is untenable. We hold that the trial court did not abuse its discretion in denying the motion.

There is yet another reason to reject the claim that the admission of this evidence was reversible error. Nowhere in his brief has the appellant even suggested how the admission of this evidence was prejudicial. The only possible exception mentioned by the appellant is his vague reference to evidence of pot. The evidence of the conversations was not critical to the state's case against the appellant. All of the charges upon which he was found guilty were shown by direct evidence. The appellant's defense was insanity and he admitted most of his criminal conduct.

## II

We turn now to the second issue. Prior to trial, appellant's counsel moved for dismissal of all charges on the basis of the immunity statement given by Sheriff Dupnik. That statement said:

"To Whom it May Concern, As Sheriff of Pima [County], I Clarence W. Dupnik, do hereby guarantee to Royce Calvin Sands II, or Patricia A. Sands, that no legal action of any kind, either Civil or Criminal shall ensue as a result of any actions on the part of Mr. Sands, since the 13th of May 1982 until this date 19 May 1982.

Clarence W. Dupnik, Sheriff of Pima Co."

We must consider the circumstances surrounding the drafting and signing of this immunity to determine its effect. Dupnik came to appellant's home in order to take appellant into custody pursuant to the arrest warrant which officers had sought to serve on him the preceding Friday. Believing that appellant would not allow him access if he knew the true purpose of the visit, Dupnik arranged a ruse, claiming to be coming to discuss appellant's allegations of misconduct on the part of sheriff's deputies. He was accompanied into the home by Chief Deputy Cheske. When they were inside and had announced their real purpose, appellant cocked the handgun in his possession and informed the officers that they were not leaving. Appellant kept the weapon and one of his children in his arms at all times and made clear to the officers that their freedom of movement was very restricted. Another weapon was prominently visible in the corner.

▆▆▆ After conducting a hearing on the motion to dismiss, the trial court ruled that the statement signed by Dupnik was given under duress and was therefore ineffective as a bar to prosecution. We agree. A contract induced by duress is unenforceable. *Ingalls v. Niedlinger,* 70 Ariz. 40, 216 P.2d 387 (1950). See also *Application of Parham,* 6 Ariz.App. 191, 431 P.2d 86 (1967) where we held an immunity given was unenforceable even in the absence of duress.

### III

Appellant's third allegation of error concerns conduct of the jury. He alludes to letters filed with the court by jurors subsequent to the verdict, concerning their belief that appellant was temporarily insane. There are also vague allegations of "dictatorial means" tainting the deliberations. He cites no authority for reversal on the basis of these allegations. We note that every verdict form supplied to the jury contained a possible verdict of "Not guilty by reason of insanity."

▆▆▆ Appellant's post-trial motion alleging juror misconduct was denied and has not been separately appealed to this court. Even were we to assume that the matter is properly before us, no evidence concerning jurors' mental processes can be used to impeach a verdict. Rule 24.1(d), Rules of Criminal Procedure, 17 A.R.S., *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982). Appellant has not cited any jury misconduct enumerated under Rule 24.1(c)(3), supra, which would permit the granting of a new trial.

### IV

▆▆▆ Appellant's argument concerning the failure of the alleged victims of the aggravated assault to apprehend imminent physical injury per A.R.S. § 13–1203(A)(2) is novel, but unconvincing. Theorizing that the bullets from his rifle were past the targets before they heard the rifle report and could reasonably formulate an apprehension of that bullet, appellant urges reversal of the convictions for aggravated assault as to Officers Hustead, Edwards, and Brennan. Absent imminent fear of bullets prior to their passing them, he argues, assault was impossible. This is not the state of the law on assault in Arizona. All victims testified that hearing the shots fired at them caused them fear that another shot might injure them. The statute requires only that the actor intentionally place "another person in reasonable apprehension of imminent physical injury," and the judge was correct in allowing the victims' testimony of their fear of a subsequent shot. See *In re Pima County Juvenile Action No. J–78539–2,* 143 Ariz. 254, 693 P.2d 909 (1984).

### V

Appellant cites as error the judge's failure to give proffered instructions on self-defense. Rule 21.3(c), Rules of Criminal Procedure, 17 A.R.S. states:

"No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the

submission or the failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.*" (emphasis added)

Our review of the record reveals that at the discussion of instructions, appellant's counsel did generally object to the refusal of the instructions but did not give any grounds for his objection. A.R.S. § 13–404(B)(2) provides, in part, that the threat or use of physical force is not justified to resist an arrest that the person knows or should know is being made by a peace officer whether the arrest is lawful or unlawful, unless the physical force used by the peace officer exceeds that allowed by law. Nor, having provoked the use of force by the others, did appellant ever withdraw from the encounter or clearly communicate to the officers his intent to do so, § 13–404(B)(3). Assuming, arguendo, proper objections were made, refusal to give the instructions was proper. *State v. Sourivathong*, 130 Ariz. 461, 636 P.2d 1243 (App.1981).

## VI

Appellant finally argues that he was deprived of due process guaranteed by both the Arizona and United States constitutions by the actions of the sheriff, a magistrate, and appellant's own counsel. The appellant alleges these actions constituted governmental misconduct. The events complained of are discussed in connection with the issue of the immunity given to the appellant. (Issue II). The magistrate never talked with appellant, only with the sheriff. No agreement reached with the magistrate was utilized. The appellant and the sheriff reached another, different agreement unrelated to that discussed with the magistrate.

The conduct of appellant's own attorney who was present at the time cannot rise to a violation of due process inasmuch as no state action was involved. All actions and conduct of the sheriff were induced by duress, including threats with two loaded weapons and the comment that the sheriff could not leave the home until an arrangement was worked out to appellant's satisfaction. Surely any result obtained at gunpoint cannot be a product of governmental misconduct approaching violation of due process and this issue has no merit.

### Cross Appeal

All of the felony convictions were for crimes committed on May 19 except the marijuana possession. It was alleged and found to have occurred on May 20. Simultaneous with the filing of the indictment, the state alleged that certain of the offenses charged were prior convictions to certain of the other charges, all pursuant to A.R.S. § 13–604(H) (1984 Supp.). That section provides:

"Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section."

The trial judge refused to treat any of the convictions for the crimes committed on May 19 as priors, finding that they were committed on the same occasion. The state has cross-appealed, contending the sentences were illegal for that reason. The state may take such an appeal, A.R.S. § 13–4032(6) (1984 Supp.).

We agree that the trial court properly found that the offenses of May 19 were committed on the same occasion and may not be treated as priors to each other. In *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980) our supreme court said:

*"Subsection H excludes the 'spree offender' who commits more than one crime in a connected series of events 'on the same occasion,'* but includes successive but separate crimes even though the defendant could be convicted of both in a single trial. The Comment to

§ 703(F), now § 604(H), supports this interpretation: 'Section 703 replaces A.R.S. §§ 13–1649 and 13–1650.'

'The code seeks to strengthen the sanctions of the criminal justice "system" by isolating the dangerous and repetitive criminal for longer periods of incarceration. * * * For example, if the offender commits two robberies on two different days and the felonies are consolidated for trial, a conviction for the first robbery may be used to invoke the provisions of § 703 in the event the felon is convicted *on the second count. However, if the offender commits a robbery, and in order to escape he or she kidnaps the victim, a consolidation of the two felonies with a conviction on the robbery would not subject this "spree offender" to the provisions of § 703* in the event of his conviction for the kidnapping. * * *' Arizona Criminal Code Commission, Arizona Revised Criminal Code § 703, at 96–97 (1975). (emphasis supplied)" 126 Ariz. at 577, 617 P.2d at 528–9, (additional emphasis added).

 Although the issue addressed in *Hannah* was different, whether a prior felony conviction obtained after the commission of the principal offense could be used for enhancement of punishment, we believe the above language clearly points the way to the correct answer to the question presented to the trial court in the instant case. The evidence supports the finding that the crimes committed by the appellant on May 19, to wit, resisting arrest, the aggravated assaults on the sheriff and his deputy inside the trailer, the kidnapping of the two officers, and the firing at the officers outside the trailer, were committed in a connected series of events on the same occasion. We also believe this determination, that is, whether the crimes were or were not committed on the same occasion, should be made by the trial court and not submitted to the jury, contrary to the appellant's argument. The jury will have returned their verdicts and whether one conviction may or may not be treated as a prior is a matter of law for the trial court to decide.

 The cases relied on by the cross-appellant are not on point. *State v. Rybolt,* 133 Ariz. 276, 650 P.2d 1258 (App.1982) involved two separate rapes with different victims, one in the morning and one in the evening of the same day. The two crimes were not committed in a connected series of events on the same occasion. And in *State v. Roylston,* 135 Ariz. 271, 660 P.2d 872 (App.1983), our court only held that the trial court prematurely dismissed the § 13–604(H) allegation of priors before hearing the evidence at trial. Nor are we persuaded that the 1978 amendment of the statute leads to a different result. The original version of A.R.S. § 13–604(H) read:

"Convictions for two or more offenses not committed on the same occasion *or as part of a single continuing course of action,* but consolidated for trial purposes, may be counted as prior convictions for purposes of this section." (emphasis added)

The amendment deleted the emphasized language. The cross-appellant argues that the only reasonable inference to be drawn from the deletion of that phrase is that crimes that are committed as part of a single continuing course of action cannot automatically be excluded as prior convictions for enhancement purposes, and the only limitation remaining after the 1978 amendment is that the offenses not be committed on the same occasion. We agree that this inference can be made, but we do not agree that the inference precludes a finding that crimes committed as in the instant case are therefore not committed on the same occasion. Rather the amendment serves to permit the use of convictions as priors where they result from a single continuing course of action on separate occasions.

 The trial court properly found that none of the May 19 felony offenses were repetitive. However, the May 19 felony convictions were also alleged as priors to the marijuana offense. The trial court erred when it treated that count as nonrepetitive. The trial court was required to

find there were two prior felony convictions to the marijuana count.

We also note an inadvertent error in the sentencing minute entry which must be corrected. It reads, in part, "the defendant is guilty of the crime of Aggravated Assault of Sheriff Dupnik, a dangerous nonrepetitive Class 3 Felony, as alleged in renumbered Count 3." Count 3 was a charge of resisting arrest on May 14, and was directed out at the close of the state's case. The aggravated assault on Dupnik was Count 4. The jury did find the appellant guilty of that count. The sentencing minute entry must be corrected to show Count 4 instead of Count 3 as to that conviction. Also the sentencing minute entry contains another similar error. It reads in part that: "the defendant is guilty of the crime of Resisting Arrest, a Class 6 Felony/Class 1 Misdemeanor, as alleged in renumbered Count 3, a non-dangerous, non-repetitive offense." As we have observed, Count 3 was directed out. However, the appellant was found guilty of another charge of resisting arrest, Count 8. The minute entry must be corrected to show Count 8 rather than Count 3. The minute entry should also be amended to show that the Count 8 conviction was treated as a felony because the appellant was sentenced to prison for that crime.

We must remand for resentencing in accordance with this opinion. We affirm all of the convictions and all of the sentences except the marijuana sentence and remand for resentencing on that count.

HOWARD and HATHAWAY, JJ., concur.