198 So.2d 360 (1967)
James K. OWEN et Ux., et al., Appellants,
v.
James L. YOUNT et Ux., et al., Appellees.
No. 6983.
District Court of Appeal of Florida. Second District.
April 26, 1967.
*361 Harry E. King, Paul Ritter and Roy Summerlin, Winter Haven, for appellants.
Clifton L. Howell, Jr., Winter Haven, for appellees.
PHILLIPS, CHARLES M., Associate Judge.
Appellants, defendants below, bring timely appeal from a Final Decree entered in favor of Appellees, plaintiffs below, enjoining and restraining defendants from interfering with plaintiffs' right of access to Lake Winterset over a certain strip of land.
In 1956 defendants Lester and Nagel subdivided a tract of land located on Lake Winterset near Winter Haven in Polk County. The plat covering this subdivision was filed and recorded. Fourteen lots referred to as "lakeview lots" are platted on the Northwest side of Lakeview Drive, and twelve lots are platted immediately on Lake Winterset. The plat shows an area between lake front lots 6 and 7 marked "drainage easement" 25 feet wide, which extends from Lakeview Drive to the lake.
Defendants Lester and Nagel actively developed the subdivision and printed a pamphlet stating that "lakeview and inside lots are 150 feet deep and have private beach facilities rendering access to the lake." The developers sold an "inside lot" to plaintiffs and represented orally to them *362 that plaintiffs would have access to the lake across the 25-foot drainage easement.
Defendant Owen purchased lakefront lot 6 in 1956 before plaintiffs purchased their lots. In 1963 Owen purchased the "drainage easement." The deed to that strip of land contained the provision that:
"This conveyance is made subject to whatever rights that may exist in the lot owners in the subdivision known as Lake Winterset Acres by virtue of the words, `drainage easement' appearing on the 25 foot strip before mentioned."
For approximately four years plaintiffs used the "drainage easement" for access to the lake. Owen observed this before and after his purchase in 1963 and finally demanded plaintiffs cease using the strip.
Paul R. Garrison and wife had apparently purchased a lakefront lot adjoining the easement in question and they petitioned to intervene in the cause.
The Chancellor denied this petition and the Appellees cite this denial as one of their points on appeal. The grounds upon which the petition was denied are not set forth in detail by the Chancellor, but if error was indeed committed on this point, it was harmless error in view of the conclusions reached in this opinion and since a different decision by the Chancellor on this point would not have changed the end result on appeal.
Almost in passing, the parties mentioned the venerable names of the classical theories of "Constructive Trust" and "Resulting Trust," but do not pursue an exposition of the fundamental characteristics of these two theories. Perhaps as they approached them more closely, it became apparent that there had been a mistake of identification. We do not find portrayed herein the necessary factual circumstances to invoke either of these doctrines, nor would such a finding be necessary to the result.
There are many cases not cited in either brief, some of which are closely in point and some of which are not, but all of which illustrate the frequency with which the problem of the instant case arises. One of the more pertinent ones is Cartish v. Soper, Fla.App., 157 So.2d 150.
It is predictable that the natural attraction of the waterfront areas of our State will continue to lure new residents and it is further predictable that the precise conflicts between property owners that form the background for the instant case will be repeated many times over. The briefs of the parties do not collate all of the similar cases, which have been the subject of appellate review and certainly there is no way to determine how many such cases have been disposed of in our lower courts. However, it now appears that there have been sufficient cases closely aligned factually with the instant case so as to constitute a separate body of law and to justify bringing together the fragments of the application of existing theories which may apply, to separate them out and attempt to create a cogent and coherent map for purchasers of land on and near waterfronts and for the persons who sell to them to follow.
An interesting sidelight to note is that in a great many cases in which a contest arises over a dedication of an easement for access to a waterfront, the owners of lands adjoining the easement purchase the fee simple title thereto.
Persons who buy fee simple title to land clearly impressed with an easement buy only the servient interest in the land clearly inferior to the dominant interest, in such case the easement. The servient fee simple interest lies dormant so long as the dominant interest exists and gives the owner right to very little other than a reversionary opportunity for a whole title at such time as the dominant easement interest is validly and legally extinguished.
We agree wholeheartedly with the position of Appellants that the Statute of Frauds applies and that an easement cannot be impressed upon real property in the State *363 of Florida solely by conversation or by the activities of advertising and selling, even though these activities include both spoken words and printed advertising material. We adhere to the fundamental that an easement can be impressed only by specific written grant or reservation, by dedication and acceptance, or by prescription. The language in several previous cases uses the words, "implied" and "implication" in regard to easements. We think it important to clarify the relationship of these words with regard to easements and do so by stating that implication alone and implied usage alone do not create an easement where none existed before. There is no cognizable, coherent, entirely separate theory of dedication, which has as its pseudonym "dedication by implication." However, once a dedication has been validly established by written grant or reservation, by dedication and acceptance or by prescription, activities of the legally concerned parties can raise valid implications that are helpful to sensible and legal interpretation of the validly existing easement.
In the instant case, there was not a full fledged effort to establish the classical elements of an easement by prescription, but there was no need to do so. We find that the property in question was validly and legally impressed with an easement by virtue of the written grant and dedication thereof in the plat and the acceptance of such plat by the official representatives of the public.
This entire case distills down to one consideration and could have been presented by the parties and tried upon it alone. To make the case, it is necessary only to recognize the existence of a valid easement and then proceed to the next and final step of interpreting the uses to which that easement might be put. The easement is entitled "drainage easement." The dedicator did not favor us with the type of drainage he had in mind when reserving this property for that use. We are aware that the removal of surface water is often called "storm drainage" and falls into two general categories, to-wit: surface drainage and subsurface drainage. In municipal parlance, surface drainage is often referred to as "improved drainage" meaning by curbs and gutters and "natural drainage," which obviously means the movement of excess water by gravity over a natural or artificial slope of unpaved land. It is difficult to imagine how the use of this easement for any of these drainage purposes would interrupt more than temporarily the usage contended by plaintiffs below, which is for access to the waterfront. Conversely, since we cannot accurately anticipate what structures might be necessary for use of an easement for drainage, we cannot conclude that use of the easement for access to the waterfront will necessarily interfere with the purpose of the dedication for a drainage easement. Accordingly, we think that the activities of all of the parties clearly imply an interpretation of this validly dedicated easement that would permit use of the easement for access to Lake Winterset in such manner as will not interfere with the primary purpose of the easement, announced of record, which is for drainage. The obvious predominant purpose of the easement is for drainage and the plaintiffs below had a duty to inquire by examining the recorded plat so that their reliance upon word of mouth and other advertising and salesmanship did not relieve them from submitting to such predominant purpose of the easement. However, a valid secondary purpose for which the easement may be used is the use for which the plaintiffs contend, to-wit: use for reasonable access on foot and by vehicle to Lake Winterset so long as it does not impair or interfere with the easement's use for drainage purposes.
With a fair appraisal of their own positions and with consideration of the interests of others, we feel that this simple and logical result could and should have presented itself to the parties, which would have made litigation unnecessary. In the interest of forestalling further unnecessary *364 litigation, we would observe that this dedication is not limited to use by owners of lots in the subdivision known as Lake Winterset Acres, but rather the dedication was made to the public.
The able and conscientious Trial Judge provided primary assistance in the understanding and solution of the matters in contest by his articulate Final Decree, which included an exposition of his views.
For the reasons and upon the theories hereinbefore set out, the conclusion of the trial court is hereby affirmed as modified and expanded by this opinion.
Affirmed.
PIERCE, Acting C.J., and HOBSON, J., concur.