247 P.3d 548

Otis SMITH, individually and as Personal Representative of The Estate of Lory Garnick Smith, Plaintiff/Appellant,

v.

Peter BEESLEY and Carol Booth, husband and wife, Defendants/Appellees.

No. 2 CA–CV 2009–0175.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 12, 2011.

Reconsideration Denied Feb. 10, 2011.

Mariscal, Weeks, McIntyre & Friedlander, P.A., by Michael R. Scheurich, Phoenix, Attorneys for Plaintiff/Appellant.

Walker & Harper, PC, by Michael J. Harper Payson, Attorneys for Defendants/Appellees.

*OPINION*

ECKERSTROM, Judge.

¶1 This case involves a land use dispute concerning a driveway built by the appellees Peter Beesley and Carol Booth (hereinafter "Beesley") over a drainage easement in the Kohl's Tonto Creek Ranch subdivision. Appellant Otis Smith, who owned a lot adjacent to the easement, filed an amended complaint against Beesley asserting claims of trespass, nuisance, and unlawful alteration of a watercourse pursuant to A.R.S. § 48–3613. After protracted proceedings regarding Smith's request for injunctive relief, the court held a bench trial on Smith's claims. It then entered judgment in Beesley's favor on all but the nuisance count, for which it found only nominal damages. On appeal, Smith argues (1) the court erred in concluding Beesley had the right to enter upon and alter land within the drainage easement, (2) the court's findings in connection with its preliminary injunction entitled him to "a final mandatory injunction" on his statutory claim, and (3) the court erred in denying his request for attorney fees and awarding them to Beesley.

¶2 We agree that the trial court erred in failing to order the removal of the driveway pursuant to § 48–3613, and because Smith's success on this statutory claim will require the court to reconsider its award of attorney fees, we reverse the court's judgment in part and remand the case for further proceedings. The balance of the judgment is affirmed.

**Factual and Procedural Background**

¶3 "When reviewing issues decided following a bench trial, we view the facts in the light most favorable to upholding the court's ruling." *Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, ¶2, 224 P.3d 230, 233 (App.2010).

¶4 The Kohl's Tonto Creek Ranch subdivision originally was owned and developed by Michael Mikol, and its plat was recorded by the Phoenix Title and Trust Company in 1952. On the plat appear several non-delineated "drainage easem[ents]" that pass over various tracts of land within the subdivision, between its lots, and over its roads. With regard to these features, the plat's declaration provides as follows:

Know All Men By These Presents: That the Phoenix Title and Trust Company ... hereby declare[s] that the accompanying plat sets forth the location of all ... lots, tracts, private roadways and playground; and gives the dimensions of lots, tracts, private roadways, and playground constituting said Kohl's Tonto Creek Ranch ...; the private roadways and the playground are reserved for the use and benefit of all ... owners of any part of this subdivision ..., their guests or employees but not to the general public. The easements shown hereon are for drainage purposes.

In 2005, Beesley obtained from Mikol's heir a quitclaim deed to the land lying between lots fifty-six and fifty-seven, land that the plat shows as being encumbered by a drainage easement. This property includes a ravine that directs water drainage from tract G, where Beesley owns several parcels, toward the Tonto Creek.

¶5 In order to improve access to his land, Beesley built a culvert and driveway over the drainage easement in August and September 2005. Beesley had consulted with two county officials before beginning this project, including Darde de Roulhac, who was the chief engineer of the Gila County Flood Control District. Based on de Roulhac's assurance that the district board did not regulate watercourses such as the one Beesley intended to build in, Beesley did not obtain written authorization from the board for his project, nor did he formally submit his construction plans to the board for review and comment. In fact, no construction drawings ever were prepared for the project. The design came from the contractor Beesley hired to build the project, not from an engineer.

¶6 Shortly after the project was completed, Smith filed a "complaint for injunctive relief" in September 2005 in which he requested that the trial court order the removal of all improvements Beesley had made to the drainage easement land. He also asked the court to permanently enjoin Beesley from using the drainage easement for any purpose other than water drainage. Smith filed an amended complaint the next month, asserting claims of trespass and unlawful alteration of a watercourse pursuant to A.R.S. § 48–

3613. Once Beesley filed his answer, Smith filed a motion for summary judgment. In his motion, Smith argued, *inter alia,* that the drainage easement was created exclusively for drainage purposes and that title to the land over which it ran belonged to Gila County, making Beesley a trespasser upon it. The court denied the motion in January 2006, finding that the plat did not state that the sole or exclusive purpose of the property had to be for drainage and did not indicate any intent to dedicate the subject property to public use.

¶ 7 In August 2006, the trial court held an evidentiary hearing in response to Smith's request for preliminary injunctive relief. At the conclusion of the hearing, the court indicated it would grant Smith's application for injunctive relief. The court expressed reluctance to do so under § 48–3613, however, given that the flood control district would not have reviewed Beesley's plans even had he complied with the statute and submitted them. The court therefore declined to order any specific relief at the time and directed the parties to submit an appropriate form of order. Smith then filed a motion for partial summary judgment on his statutory claim in which he argued he was entitled to a mandatory injunction requiring Beesley to remove the roadway immediately and restore the drainage easement to its natural state.[1]

¶ 8 The trial court denied the motion, refused to order the relief requested, and set the matter for trial. Before trial, Smith filed a request for a preliminary injunction order and factual findings from the August 2006 hearing. Although Beesley opposed the motion, the court granted the request and on March 6, 2008, entered a preliminary injunction order along with an "order specifying undisputed facts."

¶ 9 In its preliminary injunction order, the trial court found that the poor design and construction of the culvert and driveway would cause it to erode over time and would divert water within the drainage easement onto Smith's property in the event of a "100–year flow." The court further found that

Beesley had violated § 48–3613(A) by diverting a watercourse without proper authorization from the flood control district board. In part because it concluded the driveway and culvert posed a hazard to life and property, the court ordered the construction removed.

¶ 10 Before trial, Smith amended his complaint to add a nuisance claim to the trespass and statutory claims he previously had asserted. At trial, Beesley was permitted to present evidence, over Smith's objection, that an improved design would allow proper water drainage within the easement.

¶ 11 In its ruling after trial, the trial court determined Beesley's proposed culvert design would allow proper drainage and would not interfere with the easement. The court reaffirmed, however, that the driveway and culvert Beesley previously had built "were so poorly designed and badly constructed that drainage—if and when there ever was any significant rainfall—would be impaired." The court found that "the existing culvert and driveway built by Beesley—for the reasons given for issuing the preliminary injunction—do unreasonably interfere with the drainage easement. Accordingly, this interference must be remedied." The court also ordered Beesley to "take all reasonable and practical steps to ensure that during the removal of the 'old' culvert and construction of the 'new' culvert and driveway ... no further debris goes onto Smith's property."

¶ 12 Because rocks and other debris had passed through Smith's fence and onto his property during the original construction process, the trial court found Smith had suffered nominal damages supporting his nuisance claim. But the court declined to order abatement of the claimed nuisance, and it ruled against Smith on both of his remaining claims. In so doing, the court reaffirmed Beesley's ownership of the disputed property and his right to enter and improve it as he had proposed. The court also determined that the flood control district's refusal to regulate certain small watercourses rendered § 48–3613 inapplicable to the case, and it vacated its preliminary injunction order to

1. In his motion, Smith stated that a "proposed Preliminary Injunction" was submitted contemporaneously and requested the same relief. Yet from the record it appears that a preliminary injunction order was not submitted until December 2007, one year later.

the extent that order found Beesley to be in violation of the statute.

¶ 13 The trial court directed Beesley to submit a form of judgment and proposed findings consistent with the court's ruling after trial. Over Smith's objection, the court then entered its judgment and accompanying "final findings of fact and conclusions of law" that did not include any order requiring Beesley to ameliorate or remove his original driveway and culvert. The court also granted Beesley attorney fees of approximately $55,000. This appeal followed.

## Right to Enter and Alter

¶ 14 As he argued below, Smith contends the trial court erred in concluding Beesley had a right to enter upon and alter the land within the drainage easement. In his view, "the Plat Map created an implied exclusive easement limited to drainage purposes ... for the benefit of the public" that precluded Beesley from using the property for any other purpose. Smith offers five arguments to support this position, which we address in turn.

¶ 15 Preliminarily, however, we note that a plat generally is interpreted in the same manner as are other legal instruments, 26 C.J.S. *Dedication* § 67 (2010), and a court's task in interpreting a plat is to discern and give effect to the intent of the party creating it. *See City of Bartlesville v. Ambler,* 499 P.2d 433, 437 (Okla.1971); *see also Wilson v. Owen,* 261 S.W.2d 19, 23 (Mo.1953); *Rainier Ave. Corp. v. City of Seattle,* 80 Wash.2d 362, 494 P.2d 996, 999 (1972). Similarly, with respect to easements, Arizona follows the rule that " '[a] servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.' " *Powell v. Washburn,* 211 Ariz. 553, ¶ 13, 125 P.3d 373, 376–77 (2006), *quoting* Restatement (Third) of Property (Servitudes) § 4.1(1) (2000) (alteration in *Powell* ).

*Exclusivity*

¶ 16 Smith first claims the plat's language created an exclusive easement because the plat specified the drainage easement was to be used for "drainage purposes." Smith contends "[t]he use of the easement for drainage purposes, by its very nature, permits no remaining uses that are consistent with the grant." The trial court found that the plat did not specifically characterize the drainage easement as being "exclusive," and Smith does not contest this point on appeal. *See Bijou Irrigation Dist. v. Empire Club,* 804 P.2d 175, 183 (Colo.1991) (observing "the familiar principle that '[u]nless the grant conveying an easement specifically characterizes the easement as "exclusive," the grantor of the easement retains the right to use the property in common with the grantee' "), *quoting Bergen Ditch & Reservoir Co. v. Barnes,* 683 P.2d 365, 367 (Colo.Ct.App.1984) (alteration in *Bijou*). Thus, the exclusivity of the drainage easement depends on whether any other use of the property would conflict with that easement's purpose.

¶ 17 Here, the trial court determined that although the easement restricted the use of the servient estate, it nevertheless permitted other compatible uses, including the construction and use of a driveway that would allow water to drain through the ravine without diverting or obstructing its flow. In addition to being consistent with our general law that an easement allows the servient estate holder other compatible uses of the land, *Etz v. Mamerow,* 72 Ariz. 228, 231, 233 P.2d 442, 444 (1951), the court's finding is consistent with the language of the subdivision's plat as well as the jurisprudence of other states that have considered this issue. *See, e.g., Owen v. Yount,* 198 So.2d 360, 363 (Fla.Ct.App.1967) (finding drainage easement also could be used for pedestrian and vehicular access to lake). We therefore reject Smith's argument that the drainage easement here permitted no other uses.

¶ 18 In a second and related argument, Smith notes that the plat "created one integrated subdivision and defined [the] uses to which the various parcels of land could be put," specifying " 'the lots, tracts, private roadways and playground' " that made up the

development. Smith contends that he and "others who purchased Subdivision lots ... were ... entitled to rely on that 'general plan and scheme'—including the fact that the roads are located where the Plat Map describes them, and not [elsewhere]." Insofar as the trial court found the designated drainage easement also could be used as a roadway, Smith contends the court misinterpreted the plat as a matter of law.

¶ 19 We reject this argument because it rests on the faulty and unsupported premise that the plat controlled all development of individual parcels within the subdivision. As Beesley correctly observes, the plat does not function as a restrictive covenant. The plat here neither prohibited nor dictated the placement of driveways on owners' parcels, nor did it prevent individual landowners from granting easements over their own property.[2] The dual use of drainage easements as driveways, therefore, would not be inconsistent with the plat or frustrate property owners' reliance on it so long as this secondary use did not impair or interfere with the easement's primary use for drainage purposes. *See Yount*, 198 So.2d at 363.

¶ 20 Third, Smith argues that extrinsic evidence—namely, an affidavit of the developer who had retained title to the drainage easement land—showed that the only intended access point to Beesley's property was an easement over another lot. *See Wilson v. Owen*, 261 S.W.2d 19, 23 (Mo.1953) ("Where the meaning [of words used on plat] is in doubt the surrounding circumstances may be considered to determine intention."); *cf. Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 854 P.2d 1134 (1993) (explaining permissible use of extrinsic evidence when interpreting contract). As Smith acknowledges, however, the trial court refused to admit this evidence on hearsay grounds. We therefore do not consider it. Smith further claims that the court's "order specifying undisputed facts" conclusively established this point about the affidavit and the developer's intent. Yet the court disagreed with Smith's

interpretation of the affidavit and, as the trier of fact, it was not bound to accept the parties' stipulations as to undisputed facts. *See State v. Allen*, 223 Ariz. 125, ¶ 11, 220 P.3d 245, 247 (2009). Thus, to the extent the court's final findings conflicted with its earlier order, we regard the earlier order as being superseded.

¶ 21 Although Smith maintains the trial court was bound to accept this conclusion about the developer's intent because the facts stated in its pretrial order had been "deemed established" under Rule 56(d), Ariz. R. Civ. P., he misunderstands the function and effect of the rule. Its purpose is to limit and clarify the issues for trial, *Kelman v. Bohi*, 27 Ariz.App. 24, 32, 550 P.2d 671, 679 (1976), and to "speed up the trial by eliminating what were not deemed proper issues." *Ingalls v. Neidlinger*, 70 Ariz. 40, 44, 216 P.2d 387, 389 (1950).[3] An order is required by the rule only when it is "practicable" for one to be issued. Ariz. R. Civ. P. 56(d); *accord Kelman*, 27 Ariz.App. at 32, 550 P.2d at 679. To be sure, a Rule 56(d) order is more than a mere formality. *Kelman*, 27 Ariz.App. at 32, 550 P.2d at 679; *see also Shun v. Hosp. Benefit Ass'n*, 89 Ariz. 12, 16, 357 P.2d 603, 605 (1961) (recognizing Rule 56(d) findings "are conclusive and binding" on reviewing court when not challenged on appeal). But orders issued under Rule 56(d) are interlocutory in character and subject to revision by the trial court. *See Ingalls*, 70 Ariz. at 44, 216 P.2d at 389–90 (stating supreme court "had no intention in the adoption of [Rule 56(d) ] to make ... a partial summary judgment final and appealable"); *see also John Carollo Eng'rs v. Sharpe*, 117 Ariz. 413, 414–15, 573 P.2d 487, 488–89 (1977) (acknowledging trial court's authority to vacate summary judgment pursuant to Rule 59(a), Ariz. R. Civ. P.).

¶ 22 Notably, facts are only "deemed established" under Rule 56(d) when they are determined to be "without substantial controversy." Here, with the evidence further de-

---

2. Indeed, Smith maintains a valid easement allowed access to Beesley's property over another parcel in the subdivision, even though no access point to Beesley's property appears in the subdivision's plat.

3. *Ingalls* discussed and referred to § 21–1213 of the 1939 Arizona Code, which was identical to the current rule.

veloped at the bench trial, the trial court observed there was in fact a controversy about what the affidavit indicated about the developer's intent. The court therefore acted consistently with the rule to the extent it departed from its earlier order on this point.

*Dedication*

■ ¶ 23 Fourth, Smith argues Beesley did not in fact own the property in question because the land in the drainage easement was dedicated to public use. In support of this argument, Smith relies on *Allied American Investment Co. v. Pettit*, 65 Ariz. 283, 179 P.2d 437 (1947) and §§ 16–231 and 17–1818 of the 1939 Arizona Code—a pair of statutes in effect when the subdivision's plat was recorded in 1952.[4] Smith reasons that because drainage is a public use, the plat's dedication of land for this purpose combined with the sale of lots within the subdivision vested title to the subject property in Gila County.

■ ¶ 24 When the plat here was recorded, § 17–1818 provided as follows:

Any owner of a tract of land desirous of platting or subdividing the same into tracts of twenty [20] acres or less for the purpose of townsites, shall first have the same surveyed and platted, showing lots, blocks, or subdivisions, size of each lot, name and width of each street, and width of alleys, and shall dedicate the streets, public grounds and alleys to the public use, sign said dedication and acknowledge the same as conveyances of real property, and file said plat in the office of the county recorder for record. No property shall be described in any conveyance or other instrument by reference to any plat of any townsite, addition or subdivision, or any lot, block or parcel contained therein, unless such plat has been executed, acknowledged and recorded, as herein provided.

Although the first sentence of this statute expressly applies to subdivisions made "for the purpose of townsites," the second sentence clarifies that the platting and recording requirements of the statute apply to subdivisions generally whenever transfers of property refer to a plat or to a lot, block, or parcel of a subdivision. *See Yuma County v. Leidendeker*, 81 Ariz. 208, 213, 303 P.2d 531, 535 (1956) (noting broader sense of term "subdivision" as used in predecessor statute).

¶ 25 Contrary to Smith's assertion, the former § 16–231, which related to the recording of plats that established towns, does not apply to this case.[5] However, the dedication of "streets, public grounds, and alleys to the public use" under the former § 17–1818 effected a "conveyance[ ] of real property" by the terms of the statute. Thus, under the reasoning of *Allied American*, if such a dedication was made here, "the fee in the dedicated property passed to the county in trust for the public and for the uses described." 65 Ariz. at 290, 179 P.2d at 441; *see also Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, ¶¶ 8, 13, 87 P.3d 831, 834, 835 (2004) (observing statutory dedication, unlike

---

**4.** The statutes have since been renumbered and placed in our current code in substantially the same form. Former § 17–1818 can be found at A.R.S. § 9–1141. Former § 16–231 is found at A.R.S. § 9–254.

**5.** The former § 16–231 was codified in chapter 16, article 2 of the 1939 Arizona Code, which related to the incorporation, governance, and powers of cities and towns. This specific provision of the 1939 Code drew its meaning from several related statutes in its article. Section 16–228 of the 1939 Code, entitled "[s]urvey and recording of town plats," clarified that the survey and plat called for by this law applied "[w]henever any town ... shall be laid out." The plat or map required was one of the town itself, *id.*, and an original copy had to be filed "in the office of the clerk of such town or city." Ariz.Code 1939,

§ 16–229. The former § 16–231, in turn, specified that

[u]pon the filing of any such map or plat, the fee of all streets, alleys, avenues, highways, parks and other parcels of ground reserved therein to the use of the public, shall vest in such town, if incorporated, in trust, for the uses therein named and expressed; or if such town be not incorporated, then in the county until such town shall become incorporated, for the like uses.

Thus, the former § 16–231 had a limited application, like the provision from which it was derived. *See Yuma County v. Leidendeker*, 81 Ariz. 208, 212–13, 303 P.2d 531, 534–35 (1956) (discussing application of Rev. Stat. of Ariz. Civ. Code §§ 607–612 (1901)). Because the plat at issue here did not lay out a town, the former § 16–231 is technically inapplicable.

common law dedication, transfers title of property dedicated).

¶ 26 "Dedication is the intentional appropriation of land by the owner to some proper public use." *Allied American,* 65 Ariz. at 287, 179 P.2d at 439. Accordingly, "[t]he intention of the owner to set aside lands or property for the use of the public is the foundation and life of every dedication." *Id.* A dedication does not depend on any particular words or forms but on the intention of the property's subdividing owner. *Kadlec v. Dorsey,* 224 Ariz. 551, ¶ 8, 233 P.3d 1130, 1131 (2010). The party seeking to assert a dedication carries the burden of proving it. *City of Phoenix v. Landrum & Mills Realty Co.,* 71 Ariz. 382, 386, 227 P.2d 1011, 1013 (1951). "Dedication is not presumed [, ] nor does a presumption of an intent to dedicate arise unless it is clearly shown by the owner's acts and declarations." *Id.* Although a plat's unambiguous dedication creates an irrebuttable presumption of a dedication to public use, conflicting evidence regarding an owner's intent to dedicate raises a factual question to be resolved by the trier of fact. *City of Flagstaff v. Babbitt,* 8 Ariz.App. 123, 133, 443 P.2d 938, 948 (1968).

¶ 27 The trial court observed here that the plat expressly reserved use of the private roadways and playground for the subdivision's property owners "but not to the general public." As to the drainage easements shown on the plat, its declaration specified only that they were to be used for "drainage purposes." Notably, the drainage easements passed over one of the subdivision's private roads. From this evidence, the court concluded the original developer of the subdivision, Michael Mikol, did not intend to convey title to the ground over which the drainage easements ran just as he did not convey title to the roadways or playground referred to in the plat. The court also noted that the language of the plat created an "easement," which further suggested Mikol intended to retain title to the drainage property and potentially use it for other compatible purposes.

¶ 28 Although drainage undoubtedly can be a public use of property, using subdivided land for drainage does not thereby transfer title in it to the public. Merely because land can be dedicated to public use, does not mean it has been. *Kadlec,* 224 Ariz. 551, ¶ 10, 233 P.3d at 1132. Because the language of the plat here was silent as to any public dedication, and because the trial court's determination was reasonable and supported by the record, we have no basis for disturbing its finding that title to the subject property was retained by the original developer and did not pass to the public.

*Deed*

¶ 29 Fifth, and finally, Smith contends Beesley never was granted title to the property at issue because the quitclaim deed he received from the developer's heir granted him title only to tract G, and not to the land lying between lots fifty-six and fifty-seven over which the drainage easement passes. As the trial court correctly found, however, the legal description within the quitclaim deed "convey[ed the heir's] interest . . . in the strip of ground between lots 56 and 57." We therefore find no error in the court's ultimate conclusion that Beesley had a right to enter upon and alter the land within the drainage easement.

### Section 48–3613

¶ 30 Smith next argues the trial court "erred in refusing to issue a final mandatory injunction requiring the removal of the roadway." Specifically, he contends the court "was obliged to order Beesley to remove the roadway pursuant to A.R.S. § 48–3613(D)." The statute provides, in relevant part, as follows:

A . . . . [A] person shall not engage in any development which will divert, retard or obstruct the flow of waters in any watercourse without securing written authorization from the board of the district in which the watercourse is located. Where the watercourse is a delineated floodplain no development shall take place in the floodplain without written authorization from the board of the district in which the floodplain is located.

B. Written authorization is not required for nor shall the board prohibit:

. . . .

4. Other construction if it is determined by the board that written authorization is unnecessary.

. . . .

C. Before any construction authorized by subsection B of this section may begin, the person must submit plans for the construction to the board for review and comment.

D. In addition to other penalties or remedies otherwise provided by law, this state, a political subdivision or a person who may be damaged or has been damaged as a result of the unauthorized diversion, retardation or obstruction of a watercourse has the right to commence, maintain and prosecute any appropriate action or pursue any remedy to enjoin, abate or otherwise prevent any person from violating or continuing to violate this section or regulations adopted pursuant to this article. If a person is found to be in violation of this section, the court shall require the violator to either comply with this section if authorized by the board or remove the obstruction and restore the watercourse to its original state. The court may also award such monetary damages as are appropriate to the injured parties resulting from the violation, including reasonable costs and attorney fees.

¶ 31 There was no dispute here that the driveway and culvert Beesley constructed would impede the flow of water in the drainage easement and that the land within the easement constituted a "watercourse" as the term is defined in A.R.S. § 48–3601(12). Likewise, there was no dispute Beesley lacked written authorization to construct his driveway. Although § 48–3613(B) and (C) allow exemptions from the written authorization requirement under certain circumstances, Beesley's own testimony established that he did not develop and submit construction plans to the board as required by § 48–3613(C). Thus, by the plain terms of the statute, Beesley was in violation of § 48–3613(A) and Smith was entitled to relief under § 48–3613(D).

¶ 32 As mentioned earlier, in its preliminary injunction order the trial court determined Beesley had violated § 48–3613. But the court later vacated this ruling, reasoning that "the Gila County Flood Control District does not regulate drainages such as this drainage area that is less than 160 acres. Accordingly, Beesley did not unlawfully alter a watercourse or violate state law, including A.R.S. § 48–3613." The Gila County Floodplain Management Ordinance admitted into evidence showed that the flood control district board had elected not to regulate areas with a contributing watershed area of less than 160 acres. De Roulhac, the chief engineer for the district who helped amend the ordinance, testified it was created, in part, to conserve the county's resources by focusing on substantial drainage areas. Hence, as the trial court determined, it was not possible for Beesley to get written authorization from the board before beginning his project.

¶ 33 On appeal, Beesley contends the trial court's ultimate ruling was correct, given that A.R.S. § 48–3609(B)(1) directs boards to adopt regulations "governing floodplains and floodplain management," including "[r]egulations for all development of land, construction of residential ... structures or uses of any kind which may divert, retard or obstruct floodwater and threaten public health or safety or the general welfare." He also observes correctly that a board is allowed to "[a]dopt such rules and bylaws for its orderly operation as it sees fit." A.R.S. § 48–3603(C)(13). Given that the definition of a watercourse is broad enough to include any "topographic[al] feature" over which water periodically flows, § 48–3601(12), Beesley concludes it is reasonable to view these statutes as allowing flood control districts to limit the scope of their regulation and thereby exempt developers from the requirements of, and the potential liability under, § 48–3613. Smith counters that each district board has a statutory obligation to ensure the natural flow of waters over all of its watercourses, and to the extent the Gila County board has chosen not to do so, the attorney general is required to compel compliance pursuant to A.R.S. § 48–3626.

¶ 34 Assuming without deciding that a flood control district is entitled to conserve its resources by limiting the size of watersheds it regulates, § 48–3613(D) expresses an unambiguous legislative intent, unmodified by any limitation on the size of the watershed, that one person's unauthorized construction cannot divert waters to another's detriment without triggering a private cause of action. *See id.* (providing private right of action to individuals "who may be damaged ... as a result of the unauthorized diversion, retardation or obstruction of a watercourse"). Notably, a flood control district cannot lawfully enact an ordinance that conflicts with a statute. *See* § 48–3603(A) (flood control district has same powers "granted generally to municipal corporations by the constitution and laws of this state"); *City of Tucson v. Consumers for Retail Choice Sponsored by Wal–Mart,* 197 Ariz. 600, ¶ 6, 5 P.3d 934, 936–37 (App.2000) (municipal corporation cannot enact ordinance that conflicts with valid statute). And, because we must interpret an ordinance so as to harmonize it with pertinent statutes, we assume that the board had no intention to immunize those persons diverting watercourses, even in smaller watersheds, from potential civil liability under § 48–3613(D). *See City of Tempe v. Outdoor Sys., Inc.,* 201 Ariz. 106, ¶ 11, 32 P.3d 31, 35 (App.2001) (when possible, appellate court gives ordinance reasonable construction that will avoid conflict with state law).

¶ 35 At oral argument, Beesley emphasized his position that the Gila County floodplain ordinance represented a determination pursuant to § 48–3613(B)(4) that written authorization was not needed for projects such as his. We reject this argument. The ordinance itself specifies that its purpose is to "protect human life and health" and "minimize expenditure of public money for costly flood control projects." No language therein suggests it was intended to serve as a blanket authorization for all projects in smaller watersheds, including those that divert water flows to the detriment of other property owners.

¶ 36 Furthermore, any ordinance intended to exempt developers from the written au-

thorization requirement still would need to erect a process by which people seeking an exemption under § 48–3613(B)(4) could comply with § 48–3613(C) and submit their plans for review and comment. Such compliance is an express prerequisite for a subsection (B) exemption. *See* § 48–3613(C). That the ordinance here provided for no such procedure only reinforces our conclusion that the ordinance was not intended to provide a blanket exemption from the written authorization requirement for all small projects. Instead, we think its language merely expresses the practical conclusion that Gila County could not afford to provide an authorization process for those seeking to divert smaller watercourses. Thus, neither Beesley's efforts at compliance nor the Gila County floodplain ordinance shields him from liability for diverting a watercourse to his neighbor's detriment.

¶ 37 In order for Smith to obtain relief under § 48–3613(D), he was required to prove three elements: (1) a diversion, retardation, or obstruction of a watercourse; (2) a lack of authorization; and (3) the possibility of resulting damage. Contrary to Beesley's suggestion, a showing of actual damage was not required. There was no dispute here that Beesley's driveway interfered with water drainage, lacked authorization, and posed a risk to Smith's property. In its ruling after trial, the court found that "the existing culvert and driveway built by Beesley—for the reasons given for issuing the preliminary injunction—do unreasonably interfere with the drainage easement." In the preliminary injunction, the court specifically had found that "the Roadway will divert waters flowing into the Drainage Easement onto [Smith's] property" and that "storm water runoff from ... Smith['s] property would be expected to pond against, and perhaps erode or saturate, the toe of the slope" of the embankment supporting Beesley's roadway, creating a danger that the roadway "may collapse and slide onto [Smith's] property."

¶ 38 Beesley is correct that the trial court formally vacated its preliminary injunction in its ruling after trial, but it did so only to the extent the earlier ruling "includ[ed] a finding that a statutory violation [had] occurred." In that same ruling after trial, the court incor-

porated its earlier factual findings that effectively established Beesley had violated § 48–3613 and showed that Smith was entitled to relief as a matter of law. We do not defer to a trial court's legal conclusions drawn from the facts, *Ariz. Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991), but rather review its legal determinations de novo. *Braden Trust v. County of Yuma*, 205 Ariz. 272, ¶ 7, 69 P.3d 510, 512 (App.2003).

¶ 39 Section 48–3613(D) specifies that an order to "remove the obstruction and restore the watercourse to its original state" is mandatory if compliance with the statute and authorization from the board cannot be achieved. Here, although the trial court correctly found the driveway as it was constructed "must be remedied," and although the court assumed that the culvert and driveway would be removed by Beesley, it failed to order the remedy required by § 48–3613(D). Because the court erred as a matter of law in entering judgment in favor of Beesley on Smith's § 48–3613 claim, and because it also erred in failing to order the mandatory relief specified in § 48–3613(D), we reverse this portion of the court's judgment.

¶ 40 Beesley further contends he should not be "penalized with the issuance of a mandatory injunction and award of attorneys' fees for failing to obtain an authorization that as a practical matter [he] could not obtain." We note, however, that the statute only requires injunctive relief for plaintiffs damaged or likely to be damaged by diverted water flows. *See* § 48–3613(D) ("If a person is found to be in violation of this section, the court shall require the violator to either comply with this section … or remove the obstruction and restore the watercourse to its original state."). Any award of monetary damages or attorney fees rests entirely in the court's discretion. *See id.* ("The court *may* also award such monetary damages as are appropriate to the injured parties result-

ing from the violation, including reasonable costs and attorney fees.") (emphasis added). Nothing in the statute prohibits a trial court from considering the availability of authorization or the good faith efforts of a developer to comply with the law when deciding whether to award monetary damages or attorney fees.[6]

## Attorney Fees

¶ 41 Last, Smith contends the trial court erred in denying his request for attorney fees and instead awarding them to Beesley. The court awarded Beesley attorney fees without specifying the precise legal grounds for the fees or what portion of the fee award pertained to which claims. Accordingly, because we have determined Smith prevailed on his claim under § 48–3613, we must reverse the trial court's award and remand the case for a redetermination of the fee issue. For the reasons discussed above, however, we reject any suggestion that Smith was entitled to an award of attorney fees under § 48–3613(D) as a matter of law or that the court lacked a legitimate basis to refuse his fee request under this provision.

¶ 42 Smith further claims he "should have been awarded attorneys' fees pursuant to A.R.S. § 12–341.01." We conclude Smith has waived this argument by his failure to provide any citation to the record showing he sought to recover fees on that basis below. *See Spillios v. Green*, 137 Ariz. 443, 447, 671 P.2d 421, 425 (App.1983). Even if the argument were not waived, however, Smith still has not demonstrated he is entitled to a fee award on a contract theory under § 12–341.01(A).

¶ 43 Notably, the trial court denied Smith's motion to amend his complaint after trial to allege a violation of the drainage easement, and he has not challenged this ruling on appeal. Thus, to the extent his complaint failed to assert a cause of action alleging a

---

6. Although Smith maintained during oral argument that permitting consideration of these factors would make the denial of his fee request "foreordained," it does not. A trial court has broad discretion when deciding whether to award fees under § 48–3613(D), and just as a court may regard a defendant's conduct in attempting to secure authorization as a basis for denying a fee request, a court may also consider the fact that a plaintiff has prevailed in the litigation and obtained the remedial relief he sought as a basis for granting the fee award.

violation of the drainage easement, the court did not err in refusing to award Smith attorney fees pursuant to § 12–341.01, as none of his claims arose out of a contract. And if, as Smith contends, the court "ruled that the pleadings contemplated the easement interference issue," the court may clarify its ruling and decide the fee issue on remand.

¶ 44 Both parties have requested an award of attorney fees on appeal pursuant to § 12–341.01. As Beesley correctly points out, this court previously has allowed the recovery of attorney fees pursuant to § 12–341.01 and Rule 21, Ariz. R. Civ.App. P., in an action for an injunction preventing the interference with an easement. *Squaw Peak Cmty. Covenant Church of Phoenix v. Anozira Dev., Inc.*, 149 Ariz. 409, 410, 414, 719 P.2d 295, 296, 300 (App.1986). In his answering brief, however, Beesley maintains that no easement interference claim was pleaded below or ruled upon by the trial court. Thus, his contention that Smith "cannot claim victory on a claim which was never properly added to his complaint" equally undermines the basis for his own fee award. Accordingly, because neither party has established that an easement interference claim was pleaded below and disposed of in the trial court's judgment, we deny each party's request. We also deny Smith's separate request for appellate attorney fees pursuant to § 48–3613(D) in the exercise of our discretion.

**Disposition**

¶ 45 For the foregoing reasons, we reverse the trial court's judgment as it concerns Smith's claim under § 48–3613. We also reverse the court's award of attorney fees. We remand this matter to the trial court, which is directed to order the relief required by § 48–3613(D) and reconsider the award of attorney fees. In all other respects, we affirm the court's judgment.

CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge, and VIRGINIA C. KELLY, Judge.