270 P.3d 864

**SEDONA GRAND, LLC,**
**Plaintiff/Appellant–**
**Cross Appellee,**

v.

**CITY OF SEDONA, Defendant/Appellee–**
**Cross Appellant.**

No. 1 CA–CV 10–0782.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 7, 2012.

Stephen H. Schwartz, Sedona, Attorney for Plaintiff/Appellant–Cross Appellee.

LaSota & Peters PLC By Jeffrey T. Murray, Kristin M. Mackin, Phoenix, Attorneys for Defendant/Appellee–Cross Appellant.

## OPINION

SWANN, Judge.

¶ 1 This case requires us to determine whether a municipal land use ordinance is exempt as a matter of law from the strictures of the Private Property Rights Protection Act, A.R.S. §§ 12–1131 through 12–1138 (the "Act"), whenever the law's stated purpose is to promote public health and safety. We hold that a mere declaration of purpose is insufficient to invoke the exemption, and that a government entity seeking to avoid paying compensation must present evidence that its principal purpose in passing a land use law is one that qualifies for exemption under the Act. We further hold that when a land use law enacted after the effective date of the Act expands the reach of a preexisting restriction, the new law is subject to the Act. In such an instance, the Act applies to those portions of the law that represent more severe restrictions than those in existence as of December 7, 2006.

### FACTS AND PROCEDURAL HISTORY[1]

¶ 2 The Sedona Land Development Code has prohibited short-term rentals of residential property since 1995 (the "1995 SLDC"). Sedona Grand, LLC ("Appellant") owns residential property located at 20 Jasper Court in the City of Sedona. The Property, also

---

1. We view the evidence in the light most favorable to the party against whom summary judgment was entered and resolve all inferences from the evidence in that party's favor. *Prince v. City of Apache Junction,* 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

named "Sedona Grand," is one of five properties listed as vacation rentals by Red Rock Solutions, LLC. In January 2007, Appellant notified the City that it was using an "Option Agreement" as a "sales tool" to facilitate the sale of its properties "due to the restrictive nature of the City's zoning regulations." The "Option to Purchase Real Property" (the "Option") grants the "Buyer the exclusive right to inspect the property" for a set period of time.[2] The City responded in February 2007, asserting that use of the Option violated the City's longstanding ban on short-term rentals.

¶3 On January 22, 2008, expressing a commitment to maintaining the "small-town character, scenic beauty and natural resources" of the City, the Sedona City Council enacted the "City of Sedona Short–Term Vacation Rental Enforcement Ordinance" (the "Ordinance"), codified at §§ 8–4–1 to 8–4–6 of the Sedona City Code. With a stated intent to promote the aims and goals of the 1995 SLDC ban on short-term rentals in residential districts,[3] the Ordinance makes "rentals" of residential property for less than 30 consecutive days to a "transient" a class one misdemeanor punishable by a fine up to $2500, imprisonment, or both. Sedona, Ariz., Code §§ 8–4–4 to 8–4–6.

¶4 On February 25, 2008, Sedona Grand served a Notice of Claim pursuant to the Act, asserting that the Ordinance caused it to "suffer[ ] losses and [it] will continue to suffer losses as a result of the reduction of its previously existing rights to use, lease and sell" the Property. Appellant's complaint, filed May 27, 2008, set forth two counts: Interference with Contractual Relations[4] and Condemnation under the Act.

¶5 Sedona Grand moved for partial summary judgment or declaratory judgment on three issues: (1) that its existing rights to use and sell the Property were reduced by the Ordinance; (2) that the Ordinance is a land use law; and (3) that it satisfied the requirements of § 12–1134(E) and was therefore entitled to compensation from the City. The City responded and cross-moved for summary judgment, asserting that the Act did not apply because the Ordinance is aimed at the protection of the public's health and safety and is therefore exempt from the Act under § 12–1134(B)(1). The City further argued that the Act could not benefit Sedona Grand because its Options were truly "rentals" prohibited by the SLDC long before the Ordinance was enacted. Because the SLDC already prohibited the Options, the City argued, the Ordinance did not diminish any right that Sedona Grand had not already lost before the effective date of the Act.

¶6 The trial court ruled that the Ordinance is a land use law as defined in § 12–1136, but declined to reach the question whether Appellant's use of the Option had been prohibited by preexisting law because (1) it found that the § 12–1134(B)(1) exemption applied, and (2) it concluded "it appears that [the] issue is highly disputed and likely could not be resolved by way of summary judgment."

¶7 Appellant moved for reconsideration and new trial, which the trial court denied. This appeal and cross-appeal timely followed. We have jurisdiction under A.R.S. § 12–2101(A)(1).

### STANDARD OF REVIEW

¶8 Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the

---

**2.** The 11 Options Appellant sold between May and November 2007 all granted exclusive possession and "inspection rights" to the buyers for less than 30 days. At this stage, there is no evidence in the record to indicate that the Options were sham attempts to rename transactions that were in substance "rentals" under the SLDC, though we acknowledge the possibility.

**3.** The entire text of the SLDC ban reads, "[r]entals of dwelling units for periods of less than 30 consecutive days is prohibited," and is repeated for each zoned residential district in the City. Sedona, Ariz., Land Dev. Code §§ 600–617. The Sedona Grand is regulated under § 603.02(A)(1).

**4.** The superior court granted the City's motion for partial summary judgment as to this count following the March 16, 2010 oral argument and Appellant does not challenge that ruling on appeal.

proponent of the claim or defense." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Because the issue of statutory interpretation is one of law and not of fact, we review the application and interpretation of statutes and ordinances de novo. *In re MH 2007–001236,* 220 Ariz. 160, 165, ¶ 15, 204 P.3d 418, 423 (App.2008) (citations omitted).

## DISCUSSION

¶ 9 In 2006, Arizona voters passed initiative measure Proposition 207, the Private Property Rights Protection Act. Codified at A.R.S. §§ 12–1131 to 12–1138, the Act requires, among other things, just compensation for diminution in value when "any land use law" enacted after its effective date (and after an owner received an interest in the property) reduces "the existing rights to use, divide, sell or possess private real property." A.R.S. § 12–1134(A).

¶ 10 Sedona Grand argues on appeal that the trial court erred in granting summary judgment to the City because it failed to hold the City to its burden of proof when it applied the public health and safety exemption under § 12–1134(B)(1).[5] In support of its cross-appeal, the City argues that the trial court erred in finding that the Ordinance is a land use law enacted after the Act's effective date.

## I. THE ORDINANCE IS A LAND USE LAW AS DEFINED BY THE ACT.

¶ 11 The best and most reliable indicator of the legislature's intent is the statute's own words. *See Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). When interpreting a statute, we afford the words their "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). We apply the same principles to the interpretation of a voter-approved initiative.

¶ 12 Under A.R.S. § 12–1136(3), a land use law is "any statute, rule, ordinance, resolution or law enacted by this state or a political subdivision of this state that regulates the use or division of land or any interest in land or that regulates accepted farming or forestry practices." Only laws or ordinances passed after the effective date of the Act are subject to the just compensation requirement. A.R.S. § 12–1134(B)(7).

A. *The Ordinance Marks a Material Change from the SLDC and Therefore Affects Existing Rights to Use, Divide, Sell or Possess Private Real Property.*

¶ 13 The Ordinance was enacted after the effective date of the Act. Entitled "Enforcement of Restrictions on Residential Short–Term Vacation Rentals," the Ordinance provides for criminal enforcement of transactions prohibited by the 1995 SLDC. By its plain terms, the Ordinance regulates transactions involving the possession of real property, and is therefore a land use law within the meaning of A.R.S § 12–1136(3). The City argues that even if the Ordinance is a land use law, it is still not subject to the Act because it merely proscribes the same conduct as the 1995 SLDC. We disagree.

¶ 14 The plain language of the Ordinance reveals that the City did not merely reaffirm the existing ban by adding an enforcement mechanism. The Ordinance sets forth twelve expansive definitions, at least four of which differ from the plain meaning of the SLDC. Under the Ordinance, a "rental" occurs when a "transient" and an "operator" exchange "rent" for the right to possess or occupy a "short-term vacation unit." § 8–4–3. The Ordinance defines a "transient" as:

> Any person who at his own expense or at the expense of another, exercises occupancy or possession or is entitled to occupancy or possession by reason of any rental agreement, concession, permit, right of access, option to purchase, license, time-sharing arrangement, or any other type of

5. The City argues that Appellant waived the issue of the City's exemption from § 12–1134(A) by failing to raise the "burden of demonstration" argument below. We disagree. Appellant's response and reply to the cross-motion for summary judgment adequately placed the issue before the trial court. We also note that the City includes as support for this argument an impermissible citation to an unpublished decision.

agreement for a period of less than 30 consecutive calendar days, counting portions of calendar days as full days. *Id.* And "rent" is expansively defined as "consideration or remuneration charged whether or not received, for the occupancy of space in a short-term vacation rental, valued in money, whether to be received in money, goods, labor or otherwise, including all receipts, cash, credits, property or services of any kind," which "may include consideration or remuneration received pursuant to an option to purchase whereby a person is given a right to possess the property for a term of less than 30 consecutive days." *Id.* A "short-term vacation unit" includes "any structure or any portion of any structure that is rented to a transient for less than 30 consecutive days." *Id.*

¶ 15 The 1995 SLDC ban states *in toto:* "Rentals of single-family dwellings for periods of less than 30 consecutive days [are] prohibited." Sedona, Ariz., Land Dev. Code § 603.02.

¶ 16 The terms "rent," "transient" and "rental," as now defined in the Ordinance, encompass more than the "usual and commonly understood" meaning of the words used in the 1995 SLDC. Under these expansive definitions, numerous arrangements that would not commonly have been understood to be "rentals" now violate the Ordinance and subject property owners to criminal penalties. Indeed, even a time-share arrangement under which part-owners are entitled to occupancy for less than 30 days would violate the Ordinance. The plain language of the Ordinance indicates that when a "transient" agrees with an owner or renter to come to the home to provide a service "of any kind" (for example, nanny services, in-home nursing, babysitting, pet-sitting, house-sitting, assistance with home improvements), that service agreement now constitutes "rent," and if the owner permits occupancy of "any portion" for less than 31 days, he may be in violation of the Ordinance.

¶ 17 Conduct not commonly understood to be a "rental" and consideration or remuneration not commonly understood to be "rent" is now prohibited by the Ordinance. Because at least some of the above types of conduct would not fall within the usual and common understanding of the SLDC's sparsely worded ban on short-term rentals, we must conclude that the Ordinance contains new restrictions on land use. To the extent those restrictions exceed the scope of the 1995 SLDC, we hold that they are subject to evaluation under the Act.

¶ 18 Sedona Grand's principal complaint is that the Ordinance's clear prohibition of the use of the Options represents a new and material diminution of its rights to use its property. The trial court correctly recognized that it could not determine on the record before it whether the Options would have violated the 1995 ban on short-term rentals.[6] On remand, the court should permit the parties to develop a record upon which it can determine whether Sedona Grand is eligible for compensation for the loss of the use of the Options or the availability of the other arrangements that were not prohibited before the Ordinance.

## II. TO CLAIM THE EXEMPTION FROM A.R.S. § 12–1134(A), THE CITY MUST DEMONSTRATE THAT THE PRINCIPAL PURPOSE OF THE ORDINANCE IS PROTECTION OF THE PUBLIC'S HEALTH AND SAFETY.

¶ 19 Land use laws are exempt from the Act when they are enacted for "the protection of the public's health and safety." A.R.S. § 12–1134(B)(1). The trial court ultimately granted summary judgment to the City because the Ordinance itself proclaimed that it was enacted for that purpose. We conclude that this was error.

¶ 20 Proposition 207 contains a clear statement of intent. The Proposition declared:

---

6. The City casts its argument as one under the statute of limitations, reasoning that any claims attacking the 1995 SLDC would be barred. We agree that the Act would provide no relief for any loss in value flowing from prohibition of the Options if they are ultimately determined to have violated the SLDC—a question this record does not permit us to reach. Our reasoning is based on the clear terms and effective date of the Act, and the statute of limitations is not necessary to the analysis.

[T]he state and municipal governments of Arizona consistently encroach on the rights of private citizens to own and use their property, requiring the people of this State to seek redress in our state and federal courts which have not always adequately protected private property rights as demanded by the State and Federal Constitutions.

Proposition 207, Findings and Declarations, § 2(A)(4) (2006).[7]

¶ 21 To that end, the Act specifically provides that the body enacting the law bears the burden of demonstrating that an exemption applies in the case of land use laws. A.R.S. § 12–1134(C). And in the context of eminent domain, the Act instructs that "the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to *any* legislative assertion that the use is public." A.R.S. § 12–1132(A) (emphasis added). We recognize that this is not an eminent domain case, and therefore do not hold that the legislative declaration of purpose is entirely irrelevant here. But a reading of the Act in its entirety leads us inescapably to the conclusion that such declarations were not to be considered dispositive in the face of a dispute concerning the true purpose of a land use law.

¶ 22 Instead, we hold that the state or political subdivision must establish by a preponderance of the evidence that the law was enacted for the principal purpose of protecting the public's health and safety before the exemption can apply.

¶ 23 The Ordinance contains the following statement of purpose:

The City of Sedona is committed to maintaining its small-town character, scenic beauty and natural resources that are the foundation of its economic strength and quality of life.... The rental of private homes for temporary occupancy has been identified as a community concern due to the potential for increased traffic, noise, high occupant turnover, and density in single-family residential neighborhoods. The number of occupants occupying such temporary rentals has the potential to exceed standards for the design capacity of such structures and to cause health and safety problems, and as such may constitute threats to the health and safety of neighbors and nearby properties. The purpose of this Short–Term Vacation Rental Enforcement Article is to safeguard the peace, safety and general welfare of the residents of Sedona and their visitors and guests by eliminating noise, vandalism, overcrowding, neighborhood uncertainty, high occupant turnover, diminution of neighborhood character, and other secondary effects that have become associated with the illegal short-term rental of single-family dwellings. These regulations are necessary to protect the integrity and small-town character of the city's residential neighborhoods.

Sedona, Ariz., Code § 8–4–2 (citation omitted).

¶ 24 Citing *State v. Watson,* 198 Ariz. 48, 6 P.3d 752 (App.2000), and *Smith v. Beesley,* 226 Ariz. 313, 247 P.3d 548 (App.2011), the City argues that this language is sufficient to satisfy its burden of demonstrating that the Ordinance limits owners' rights for the protection of the public's health or safety. This reliance is misplaced.

¶ 25 The *Watson* ordinance prohibited accumulations of garbage, debris and visual blight "if the result is a health or safety hazard." 198 Ariz. at 50, ¶ 2, 6 P.3d at 754. There, we held that the ordinance plainly evinced its health and safety goals in that it focused on accumulations of garbage or debris "in which, 'insects, rodents, snakes or other harmful pests may live, breed or multiply or which may otherwise create a fire hazard.'" *Id.* at 53, ¶ 14, 6 P.3d at 757. The public health and safety purpose was self-evident—insects, rodents, snakes and fire threaten human health and safety. No further evidentiary showing was necessary there because the harms to be avoided fell

7. The text of Proposition 207 can be found at: *http://www.azsos.gov/election/2006/info/* *pubpamphlet/english/Prop207.htm.*

squarely within the core meaning of public health.[8]

¶26 The *Beesley* court looked to the purpose statement of a floodplain ordinance in relation to a statewide statute. 226 Ariz. at 323, ¶35, 247 P.3d at 558. The *Beesley* ordinance was distinguishable from the Ordinance here in that the floodplain ordinance at issue had a commonsense, self-evident nexus. The logical steps from uncontrolled flood waters or improperly blocked waterways to death and destruction of property, and from stagnant waters to disease and ill-health, are easily made without an additional evidentiary showing. In other words, the protective purpose is clearly evinced by the effect of the ordinance alone. Here, the nexus between prohibition of short-term occupancy and public health is not self-evident, and the governing body must do more than incant the language of a statutory exception to demonstrate that it is grounded in actual fact. Indeed, the Ordinance's own text suggests that its purpose is to protect the character of neighborhoods. This may be a desirable goal to policy makers, but neighborhood character and public health are entirely distinct concepts. To invoke the exception, the City must provide evidence beyond mere "legislative assertion" to carry the burden that the Act assigns to it.

*CONCLUSION*

¶27 For the reasons set forth above, we affirm the trial court's determination that the Ordinance is a land use law subject to the Act. We reverse its holding that the public health and safety exception applies as a matter of law and remand for proceedings consistent with this decision, including an evidentiary proceeding concerning the primary purpose of the Ordinance and the lawfulness of the Options under the SLDC.

**8.** The Act provides examples of the types of laws that might further public health and safety: "rules and regulations relating to fire and building codes, health and sanitation, transportation or traffic control, solid or hazardous waste, and pollution control." A.R.S. § 12–1134(B)(1). The intended effect of the Ordinance does not appear on its face to be principally geared to any of these issues, though an evidentiary presentation may further illuminate its true purpose.

CONCURRING: MARGARET H. DOWNIE, Presiding Judge, and DONN KESSLER, Judge.